[No. 59491-1. En Banc. August 19, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVE HALSTIEN, *Petitioner*.

110

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Terri Luken, Deputy,* for respondent.

JOHNSON, J. — Steve Halstien seeks review of a Court of Appeals decision affirming his second degree burglary conviction with a finding of sexual motivation. At issue is whether the juvenile sexual motivation statute is unconstitutionally vague and overbroad, and whether the evidence is sufficient to support the court's finding that a motive for the burglary was sexual gratification. We affirm.

## I

Halstien, a juvenile, was accused of burglarizing the house of C.B., a female customer on his newspaper route. In addition to charging Halstien with second degree burglary, the prosecutor alleged the crime was sexually motivated within the meaning of RCW 13.40.135, the juvenile sexual motivation statute. At a fact-finding hearing, the parties agreed Halstien burglarized C.B.'s house; thus, the only issue was whether the burglary was sexually motivated.

Halstien delivered newspapers to C.B. from June 1989 to the date of the burglary, November 3, 1990. He collected payment for the newspaper at her house every couple of months, and C.B. saw him in the neighborhood on his bicycle or skateboard about three times a week. According to C.B., Halstien acted overly familiar when collecting payment and asked inappropriate questions about her clothes, stereo, car, and house. Halstien occasionally hung around

while C.B. was in her yard, watching her and asking questions about the value of various personal items.

In April 1990, C.B. asked her secretary to call the newspaper and cancel her subscription in part because Halstien "gave [her] the creeps when he came to the door and collected". Despite her requests, Halstien continued to deliver the newspaper. Beginning in March 1990, C.B. began hearing noises outside after midnight and, in the morning, would find her fence gate open. She also began to notice window screens missing and would find burn holes in the screens near the latches.

On the Friday night prior to the burglary, Halstien came to collect for the paper between 9:30 and 10 p.m. Halstien asked C.B. if he had woken her and if she had to get dressed to come to the door. She responded, "no". C.B. testified the questions were inappropriate and made her feel very uncomfortable. Nevertheless, she did not find it odd for Halstien to collect so late because she was rarely home in the evening and Halstien had been unable to collect for 2 months.

On the night of the burglary, C.B. left her house at about 7 p.m. and returned around 1 a.m. She saw nothing out of place before she went to bed. About 7:30 in the morning, she awoke to a noise upstairs, called out, and heard a window open. While on the telephone to the police, she noticed the bathroom window was broken. While going through the house with the police, C.B. found that a box of photographs, which she had previously organized, had been removed from the shelf in the loft area upstairs. Some of the pictures had been dropped on the floor, and others were "in a chair across the room in specific little piles". Report of Proceedings, at 24. All of the pictures were of C.B., either alone or with other people. Muddy footprints were found in the bathroom, the family room, and in C.B.'s bedroom around both sides of the bed where she had been sleeping. C.B.'s four televisions, three VCR's, two stereos, paintings, artwork, jewelry, and purse had not been touched, including over $200 in her wallet. The only items taken from the house were a box of condoms and a vibrator, both of which had been in one of the nightstands

next to C.B.'s bed. The vibrator was found, broken, in a park located behind C.B.'s house. The condom box was found, empty, in a trash can.

At the hearing, Officer Shawn Riley testified he found a framed picture of C.B. and her sister, which had been moved from the kitchen to the family room sofa. As he dusted the frame for fingerprints, he "noticed a funny substance on it that [he] . . . knew [] wasn't something that was normal". Riley said that, based on his "training and experience [he believed] . . . the substance was either semen or some type of bodily fluid". Report of Proceedings, at 90. Detective John Haslip testified he had looked at the frame and noticed "some type of liquified substance that had been deposited on the frame" and had run down the front of the glass. Report of Proceedings, at 149. Because some of the fingerprint powder had gotten on the frame, the frame could not be tested accurately to determine if the substance was semen.

Halstien first denied but then admitted he had burglarized the house. He claimed he broke in looking for money because he was mad at C.B. who owed him money for the papers. At first, he stated he did not find any money or take anything; later he admitted taking the condoms and vibrator from the nightstand, but did not know why he took them. Halstien stated he threw the vibrator against a tree, kept the condoms, and threw the box away. He also admitted looking at the photographs and admitted burning holes in the window screens during the burglary. Halstien claimed the burglary occurred the evening before between 8 and 10 p.m. when C.B. was not home. According to C.B., however, when she left the house that evening, she activated her burglar alarm, including motion detectors, that would have been tripped had Halstien committed the burglary that evening.

The trial court found the burglary had occurred during the morning when C.B. was home, and that a primary motive for the burglary was Halstien's sexual gratification. The court concluded Halstien committed second degree burglary with sexual motivation. At the disposition hearing, the court found that sentencing Halstien in the standard range would result

in manifest injustice, based on three factors: (1) Halstien's actions both before and during the burglary demonstrated predatory, obsessive behavior toward the victim, C.B.; (2) Halstien was again arrested for second degree burglary, this time armed with knives, while awaiting trial for the first offense; and (3) a sex offender therapist found Halstien to be at a high risk to reoffend. Clerk's Papers, at 31. The court sentenced him to 104 weeks at the department of juvenile rehabilitation and provided him with written notice pursuant to RCW 10.01.200 of the requirement that he register as a sex offender under RCW 9A.44.130 upon his release.

The Court of Appeals affirmed Halstien's conviction and held the juvenile sexual motivation statute is not unconstitutionally vague or overbroad. *State v. Halstien*, 65 Wn. App. 845, 829 P.2d 1145 (1992). This court granted Halstien's petition for review under RAP 13.4(b)(3), as well as Halstien's motion to supplement his petition to add the issue of whether Halstien is required to register as a sex offender.

## II

In 1990, the Legislature enacted the Community Protection Act, which includes a provision whereby a prosecutor may add a special allegation of sexual motivation in criminal cases other than sex offenses. Laws of 1990, ch. 3, §§ 601, 604 (codified at RCW 13.40.135; RCW 9.94A.127). The Legislature provided separate sexual motivation statutes for both juveniles and adults.[1] RCW 13.40.135; RCW 9.94A.127. The juvenile statute states:

> (1) The prosecuting attorney shall file a special allegation of sexual motivation in every juvenile offense other than sex offenses as defined in RCW 9.94A.030(29)(a) or (c) when suffi-

---

[1] The adult sexual motivation statute, RCW 9.94A.127, is extremely similar but not identical to the juvenile statute, containing slight changes in wording to accommodate the differences between proceedings in which an adult is charged with a "crime" and tried before a jury, and a juvenile is charged with an "offense" and heard before a judge. *Compare* RCW 9.94A.127 *with* RCW 13.40.135. In addition, the juvenile statute, RCW 13.40.135(1), refers to "the most plausible, reasonably *consistent* defense that could be raised under the evidence", whereas the adult statute, RCW 9.94A.127(1), looks to "the most plausible, reasonably *foreseeable* defense that could be raised". (Italics ours.)

cient admissible evidence exists, which, when considered with the most plausible, reasonably consistent defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact-finder.

(2) In a juvenile case wherein there has been a special allegation the state shall prove beyond a reasonable doubt that the juvenile committed the offense with a sexual motivation. The court shall make a finding of fact of whether or not the sexual motivation was present at the time of the commission of the offense. This finding shall not be applied to sex offenses as defined in RCW 9.94A.030(29)(a) or (c).

(3) The prosecuting attorney shall not withdraw the special allegation of "sexual motivation" without approval of the court through an order of dismissal. The court shall not dismiss the special allegation unless it finds that such an order is necessary to correct an error in the initial charging decision or unless there are evidentiary problems which make proving the special allegation doubtful.

RCW 13.40.135(1)-(3). A finding of sexual motivation may be considered as an aggravating factor in sentencing determinations. RCW 13.40.150(3)(i)(v); RCW 9.94A.390(2)(e).[2] Halstien challenges the juvenile sexual motivation statute as both unconstitutionally vague and overbroad. We first address his vagueness claim.

## A

■ The due process vagueness doctrine under U.S. Const. amend. 14, § 1 and Const. art. 1, § 3[3] serves two important

---

[2]In determining punishment for a juvenile, the court shall consider as an aggravating factor whether "[t]he current offense included a finding of sexual motivation *pursuant to RCW 9.94A.127*". (Italics ours.) RCW 13.40.150(3)(i)(v). Under the adult statute, the court shall consider "a finding of sexual motivation *pursuant to RCW 9.94A.127*" as an aggravating factor. (Italics ours.) RCW 9.94A.390(2)(e). We note that both the juvenile and adult sentencing statutes refer to a finding of sexual motivation under only the *adult* statute, RCW 9.94A.127. Presumably, however, a juvenile's disposition order imposing punishment would be based on a finding of sexual motivation under the *juvenile* statute, RCW 13.40.150, *not* the adult statute, RCW 9.94A.127. Regardless, we need not address this issue because Halstien has not challenged his exceptional sentence in this petition, and the judge did not explicitly list the finding of sexual motivation as a basis for his exceptional sentence. This court will not consider an issue not raised by assignment of error or supported by argument and citation of authority. *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

[3]Halstien has offered no argument why the due process clause in Const. art. 1, § 3 should be construed any differently than U.S. Const. amend. 14, § 1, nor

purposes: first, to provide citizens with fair warning of what conduct they must avoid; and second, to protect them from arbitrary, ad hoc, or discriminatory law enforcement. *Tacoma v. Luvene*, 118 Wn.2d 826, 844, 827 P.2d 1374 (1992); *Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366, 78 A.L.R.4th 1115 (1988); *State v. Richmond*, 102 Wn.2d 242, 243-44, 683 P.2d 1093 (1984).

██ Halstien argues the juvenile sexual motivation statute is unconstitutionally vague both on its face and as applied to him. A criminal defendant may bring a facial vagueness challenge if the statute implicates First Amendment rights such as free speech or free association. *State v. Sigman*, 118 Wn.2d 442, 445-46, 826 P.2d 144 (1992); *Luvene*, 118 Wn.2d at 845 n.10 (citing *Kolender v. Lawson*, 461 U.S. 352, 359, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983)). When a challenged statute does not involve First Amendment rights, the statute is not properly evaluated for facial vagueness, but must be evaluated in light of the particular facts of each case. *Sigman*, 118 Wn.2d at 445. Halstien argues the statute is unconstitutionally vague under the First Amendment by infringing on protected speech and thought. Therefore, we address both vagueness challenges.

Under the due process clause of the Fourteenth Amendment, a statute is void for vagueness if either: (1) the statute "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed"; or (2) the statute "does not provide ascertainable standards of guilt to protect against arbitrary enforcement". *Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990); *see Kolender v. Lawson*, 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983). A statute is unconstitu-

---

has he briefed the relevant *Gunwall* factors necessary for determining whether an independent analysis of the state constitution is proper. *See State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Accordingly, we base our analysis only upon federal due process principles set forth by the United States Supreme Court and this court, and do not address whether the state constitution provides greater protection. *See, e.g., World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 390, 816 P.2d 18 (1991), *cert. denied*, ___ U.S. ___, 118 L. Ed. 2d 391, 112 S. Ct. 1672 (1992).

tionally vague if either requirement is not satisfied. *Douglass*, 115 Wn.2d at 178.

■ Despite its broad sweep, the vagueness doctrine is limited in two important ways. *Eze*, 111 Wn.2d at 26. First, a statute is presumed to be constitutional unless it appears unconstitutional beyond a reasonable doubt. *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991); *Eze*, 111 Wn.2d at 26; *State v. Aver*, 109 Wn.2d 303, 306-07, 745 P.2d 479 (1987). The party challenging a statute carries the burden of proving its unconstitutionality. *Haley*, 117 Wn.2d at 739; *Eze*, 111 Wn.2d at 26; *Aver*, 109 Wn.2d at 307.

■ Second, "impossible standards of specificity" or "mathematical certainty" are not required because some degree of vagueness is inherent in the use of language. *Eze*, 111 Wn.2d at 26-27; *Haley*, 117 Wn.2d at 740. "Consequently, a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his [or her] actions would be classified as prohibited conduct". *Eze*, 111 Wn.2d at 27.

Halstien argues the statute is void for vagueness because the presence of sexual motivation during the commission of a nonsexual criminal offense is so vague a concept that the statute fails to give fair warning of what conduct is prohibited by the sexual motivation statute, resulting in arbitrary enforcement. He contends a "motivation" is too nebulous a concept for ordinary persons to understand.

■ We disagree. The term "sexual motivation" is sufficiently definite that ordinary people can understand what conduct is proscribed. Under the statute,

"Sexual motivation" means that one of the purposes for which the respondent committed the offense was *for the purpose of his or her sexual gratification.*

(Italics ours.) RCW 13.40.020(25) (formerly RCW 13.40.020-(21); *see* Laws of 1993, ch. 373, § 1 (changing section number only)); *see also* RCW 9.94A.030(30) (parallel adult statute definition). The two key terms in this definition are "pur-

pose" and "sexual gratification". These terms serve to clarify and narrow the reach of the statute.

"Purpose" refers to a defendant's mental state. Many of our criminal statutes contain mens rea elements such as intent, knowledge, or recklessness, where the defendant's mental state must be proved beyond a reasonable doubt. *See generally* RCW 9A.08.010; RCW 9A.32.020, .030, .050. Such mens rea elements have been upheld against vagueness challenges. *See Sigman*, 118 Wn.2d at 446-47 ("Use of the mental state of knowingly as an element of a crime does not render a statute unconstitutionally vague."). Motive is recognized in murder cases as evidence of purpose, intent, or premeditation. *State v. Ross*, 56 Wn.2d 344, 349, 353 P.2d 885 (1960).

The second term, "sexual gratification", is also not an oblique concept. Courts have had no difficulty applying this term in the context of the indecent liberties statute. Under that statute, " 'sexual contact' means any touching of the sexual or other intimate parts of a person done *for the purpose of gratifying sexual desire* of either party." (Italics ours.) RCW 9A.44.010(2). The Court of Appeals held a defendant's conduct met this definition when he was lying prone, outstretched on top of a young woman with her slacks pulled down, "trying to rock and work his way into her". (Italics omitted.) *In re Adams*, 24 Wn. App. 517, 518, 601 P.2d 995 (1979). The court stated: "That the *purpose* of the whole encounter was *to gratify sexual desire* is clear." (Italics ours.) *Adams*, 24 Wn. App. at 518.[4]

Washington courts have rejected vagueness challenges to the indecent liberties statute, as well as other statutes containing language similar to the juvenile sexual motivation statute. *See State v. Johnson*, 96 Wn.2d 926, 929-30, 639 P.2d 1332 (1982); *Adams*, 24 Wn. App. at 520; *State v. Galbreath*, 69 Wn.2d 664, 419 P.2d 800 (1966). The Court of

---

[4]At issue in *Adams* was the former indecent liberties statute, RCW 9A.88.100; however, the definition of "sexual contact" for sexual gratification was the same as the current definition.

Appeals rejected a vagueness challenge to the sexual exploitation statute, which defines the mental element of that offense as exhibition *"for the purpose of sexual stimulation of the viewer"*. (Italics ours.) *State v. Bohannon*, 62 Wn. App. 462, 468, 814 P.2d 694 (1991) (quoting RCW 9.68A.011(3)(e)). The terminology in these statutes cannot meaningfully be distinguished from the language Halstien claims is unconstitutionally vague. In each case, the statute refers to a purpose or motivation to stimulate or gratify sexual desire.

Halstien next argues the statute is vague because it does not require the finding of sexual motivation to be based on objective, criminal sexual conduct. According to Halstien, the statute fails to distinguish between innocent and guilty sexual motivation and in effect punishes a defendant for his or her thoughts.

We disagree. The language of the statute provides the sexual motivation must be connected with the criminal conduct of the defendant:

> In a juvenile case wherein there has been a special allegation the state shall prove beyond a reasonable doubt that the juvenile *committed the offense with* a sexual motivation. The court shall make a finding of fact of whether or not the sexual motivation *was present at the time of the commission* of the offense.

(Italics ours.) RCW 13.40.135(2). As the Court of Appeals stated:

> Inherent in this subsection is the requirement that the finding of sexual motivation be *based on some conduct* forming part of the body of the underlying felony. The statute does not criminalize sexual motivation. Rather, the statute makes sexual motivation *manifested by the defendant's conduct* in the *course of committing a felony* an aggravating factor in sentencing.

(Italics ours.) *State v. Halstien*, 65 Wn. App. 845, 853, 829 P.2d 1145 (1992).

■ We concur. The statute requires evidence of identifiable conduct by the defendant while committing the offense which proves beyond a reasonable doubt the offense was committed for the purpose of sexual gratification. *See, e.g., Luvene*, 118 Wn.2d at 842-43. Contrary to Halstien's posi-

tion, the statute does not limit this conduct only to criminal sexual contact. If the underlying crime did include actual sexual contact, the defendant could be charged under one of the sex offense crimes, and the sexual motivation allegation would be superfluous. Reading in a requirement of sexual contact would undermine the purpose of the statute, which was enacted to fill a perceived gap in the criminal code not covered by existing sex offense crimes and to mandate treatment for such offenders in an effort to prevent them from later committing more serious sex offenses. *See* Task Force on Community Protection, *Final Report to Governor Booth Gardner* II-8 (1990).

The statute also meets the second part of the vagueness test: it contains ascertainable standards of guilt which prevent arbitrary enforcement. As noted above, the State must present evidence of some conduct during the course of the offense as proof of the defendant's sexual purpose. The State carries this burden of proof and must establish the sexual motivation allegation beyond a reasonable doubt. RCW 13.40-.135(2). In addition, the prosecutor's charging discretion is guided and limited by the statute. The prosecutor may not file the allegation unless "sufficient admissible evidence exists" which would justify a finding of sexual motivation by a "reasonable and objective fact-finder", and the prosecutor must weigh that evidence against the most plausible defense. RCW 13.40.135(1). The trial court must also enter a finding of fact whether or not the sexual motivation was present. RCW 13.40.135(2). These standards protect against arbitrary, ad hoc, or discriminatory enforcement.

We hold the juvenile sexual motivation statute is not void for vagueness.

### B

Halstien next argues the juvenile sexual motivation statute is unconstitutionally overbroad because it infringes on constitutionally protected areas of speech, including private plans, speech, and thoughts about sexual activity.

In general, the First Amendment prevents government from proscribing speech or expressive conduct. *R.A.V.*

*v. St. Paul*, ___ U.S. ___, 120 L. Ed. 2d 305, 317, 112 S. Ct. 2538 (1992). Overbreadth analysis measures how statutes that prohibit conduct fit within the universe of constitutionally protected conduct. *Tacoma v. Luvene*, 118 Wn.2d 826, 839, 827 P.2d 1374 (1992). A law is overbroad if it sweeps within its prohibitions free speech activities protected under the First Amendment. *Luvene*, 118 Wn.2d at 839; *Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, ___ U.S. ___, 114 L. Ed. 2d 85, 111 S. Ct. 1690 (1991). Criminal statutes in particular require careful scrutiny and may be facially invalid if they " 'make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.' " *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (quoting *Houston v. Hill*, 482 U.S. 451, 459, 96 L. Ed. 2d 398, 107 S. Ct. 2502 (1987).

First Amendment overbreadth doctrine is largely prophylactic, aimed at preventing any "chilling" of constitutionally protected expression. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853, 855 (1990-1991). As a result, courts will permit facial overbreadth challenges when the statute in question chills or burdens constitutionally protected conduct. *Luvene*, 118 Wn.2d at 841. Overbreadth doctrine also has a constitutionally mandated "core", in which a defendant has a right not to be sanctioned except under a constitutionally valid rule of law. Fallon, *supra* at 871-75; Monaghan, *Overbreadth*, 1981 Sup. Ct. Rev. 1, 3. When a defendant convicted under a criminal statute challenges the statute as overbroad, he or she is asserting that the conviction rests on an unconstitutional law. *Luvene*, 118 Wn.2d at 841. Application of the overbreadth doctrine is strong medicine, however, and should be employed by a court sparingly and only as a last resort. *O'Day v. King Cy.*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988); *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 37 L. Ed. 2d 830, 93 S. Ct. 2903 (1973).

The first task in overbreadth analysis is to determine if a statute reaches constitutionally protected speech or expressive conduct. *Luvene*, 118 Wn.2d at 839; *Webster*, 115 Wn.2d at

641. If the answer is yes, then the court must examine whether the statute prohibits a "real and substantial" amount of protected conduct in contrast to the statute's plainly legitimate sweep. *Luvene*, 118 Wn.2d at 841; *Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366, 78 A.L.R.4th 1115 (1988); *O'Day*, 109 Wn.2d at 804. Even if a statute is "substantially overbroad", it will not be overturned unless the court is unable to place a sufficiently limiting construction upon the statute. *Luvene*, 118 Wn.2d at 839-40; *Webster*, 115 Wn.2d at 641. If possible, a statute must be interpreted in a manner that upholds its constitutionality. *Luvene*, 118 Wn.2d at 841; *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971).

Halstien argues the statute sweeps protected speech within its ambit by using the defendant's speech and conduct as evidence that his motive in committing the burglary was sexual motivation. He argues the statute does not require proof of any overt sexual act toward a victim, and accordingly, the enhanced punishment under the statute is based solely on a defendant's speech or thoughts about sexual activity.

The sexual motivation statute is directed at the action or conduct of committing a crime because of the defendant's desire for sexual gratification. The statute does not punish a defendant for having sexual thoughts, but rather punishes the defendant for *acting* on those thoughts in a criminal manner. As noted above, that intent must be established by the defendant's conduct while committing the offense. Halstien argues, however, that because the underlying crime such as burglary is already punishable, all that remains is an additional punishment for the defendant's motive in selecting the victim.

■ This argument was recently rejected by the United States Supreme Court in the context of upholding a hate crimes statute, which enhances a defendant's penalty for the underlying crime based on a discriminatory motive. *Wisconsin v. Mitchell*, ___ U.S. ___, ___ L. Ed. 2d ___, 113 S. Ct. 2194 (1993). The court reasoned that a statute is not necessarily invalid because it punishes a defendant's motive or reason for acting. *Mitchell*, 113 S. Ct. at 2200-01 (noting

motive plays a role in federal and state antidiscrimination laws, which are constitutional). A defendant's motive for committing an offense is also an important factor in determining what sentence to impose. *Mitchell*, 113 S. Ct. at 2199. " 'Deeply ingrained in our legal tradition is the idea that the more purposeful is the criminal conduct, the more serious is the offense, and, therefore, the more severely it ought to be punished.' " *Mitchell*, 113 S. Ct. at 2199 (quoting *Tison v. Arizona*, 481 U.S. 137, 156, 95 L. Ed. 2d 127, 107 S. Ct. 1676 (1987)).

The enhanced penalty under the Wisconsin statute reflects that state's desire to single out for greater punishment bias-inspired conduct which is thought to inflict greater individual and societal harm. *Mitchell*, 113 S. Ct. at 2201. The same analysis applies to the sexual motivation statute at issue here. This statute reflects the Legislature's determination that a defendant who commits a crime such as burglary for the purpose of sexual gratification is more culpable than a defendant who commits the same crime without that motivation. The overarching policy is to protect the public from offenders who are making a connection between criminal acts and sexual objectives.

Halstien next argues the statute sweeps too broadly by using a defendant's speech, conduct, or even thoughts about sexual activity both before and during the crime to prove the defendant's motive was sexual gratification. He contends the result will be a chilling effect on protected expressive activity because citizens will live in continual fear that something they say or do will later be used to invoke the statute.

This argument was also rejected by the Supreme Court in the context of the hate crimes statute as "far more attenuated and unlikely than that contemplated in traditional 'overbreadth' cases." *Mitchell*, 113 S. Ct. at 2201. The same holds true in this case. The prospect of citizens suppressing their sexual thoughts or speech for fear that evidence of such thoughts will be introduced against them at trial if they later commit an offense against person or property is "simply too

speculative a hypothesis" to support an overbreadth claim. *Mitchell*, 113 S. Ct. at 2201.

Halstien is correct that the State may focus on his speech and expressive conduct both during and before the burglary to prove his motive was sexual gratification. However, "there is a distinction between making speech the crime itself, or an element of the crime, and using speech to *prove* the crime". (Italics ours.) *State v. Plowman*, 314 Or. 157, 167, 838 P.2d 558 (1992), *cert. denied,* 61 U.S.L.W. 3834 (1993). "The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Mitchell*, 113 S. Ct. at 2201. Thus, a defendant's words or expressive conduct may be used to prove the defendant's intent to commit the crime for sexual gratification. Such use does not run afoul of the First Amendment.

We hold the juvenile sexual motivation statute does not reach constitutionally protected speech or conduct under the First Amendment and is therefore not overbroad.[5]

### III

Halstien next assigns error to various evidentiary rulings by the trial court. He argues the trial court should not have admitted the evidence of his prior contacts with C.B. or Officer Riley's opinion that the substance on the picture frame was semen. He also argues the evidence taken as a whole was not sufficient for the trial court to find his motive at the time of the burglary was sexual gratification. We address each of these in turn.

### A

Halstien argues the trial court abused its discretion by admitting evidence under Rules of Evidence (ER) 404(b) of

---

[5]Halstien also argues the sexual motivation statute infringes· upon his right to privacy. This claim is without foundation. The constitutional right to privacy protects two kinds of interests: the right to autonomous decisionmaking and the right to confidentiality or nondisclosure of intimate personal information. *O'Hartigan v. Department of Personnel*, 118 Wn.2d 111, 117, 821 P.2d 44 (1991). The juvenile sexual motivation statute does not implicate either of these two interests.

his prior contacts with C.B. He argues the trial court failed to state on the record whether the probative value of these contacts was outweighed by the danger of unfair prejudice. The trial court ruled Halstien's prior contacts did not constitute prior bad acts under ER 404(b). As a result, balancing the prejudicial effect of the evidence against its probative value was not required.

The admission of evidence lies largely within the sound discretion of the trial court. *State v. Laureano*, 101 Wn.2d 745, 764, 682 P.2d 889 (1984). A decision to allow certain evidence will not be reversed on appeal absent a showing of abuse of discretion. *Laureano*, 101 Wn.2d at 764; *State v. Robtoy*, 98 Wn.2d 30, 42, 653 P.2d 284 (1982).

ER 404(b) states:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When deciding whether to admit evidence under ER 404(b), "the trial court must determine whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors". *Laureano*, 101 Wn.2d at 764; *see also* ER 403.

 The question here is whether Halstien's prior contacts with C.B. are "acts" within the meaning of ER 404(b). The rule does not define the terms "other crimes, wrongs, or acts". The traditional notion behind the rule is that "prior misconduct", including "acts that are merely unpopular or disgraceful", is inadmissible to show that the defendant is a "criminal type" and is likely to have committed the crime for which charged. 5 K. Tegland, Wash. Prac., *Evidence* § 114, at 383-84 (3d ed. 1989). Halstien's prior contacts with C.B. may not rise to the level of "misconduct", but the contacts are certainly prior "acts" which are relevant to proving Halstien's motive or intent. As such, they fall within the scope of ER 404(b). Prior to admitting the testimony, however, the trial court should have balanced on the record whether the

probative value of the testimony substantially outweighed any undue prejudice.

█ An evidentiary error which is not of constitutional magnitude requires reversal only if the error, within reasonable probability, materially affected the outcome of the trial. *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). On the record before us, it is manifestly evident that Halstien's prior contacts were relevant to show motive and any prejudicial effect was minimal, given the prior contacts did not constitute a "crime" or "wrong" and arguably were not "misconduct". Even without consideration of this evidence, however, sufficient evidence was presented from the burglary itself to prove Halstien's motive. The trial court's failure to weigh any prejudicial effect did not substantially affect the outcome and is harmless error.

## B

Halstien next contends the trial court erred in admitting opinion testimony by Officer Riley that the substance on the picture frame might have been semen. The Court of Appeals held the trial court abused its discretion in admitting this evidence because the officer did not know with certainty the substance was semen, and the probative value of the testimony was outweighed by the danger of unfair prejudice. The Court of Appeals held this was harmless error, however, because nothing in the court's findings and conclusions indicates the court gave the officer's statement any weight and because the finding of sexual motivation did not depend upon the improperly admitted evidence. *Halstien*, 65 Wn. App. at 850-51.

The Court of Appeals analysis is partially incorrect. The trial court's admission of the officer's testimony is consistent with *State v. Ferguson*, 100 Wn.2d 131, 667 P.2d 68 (1983). In *Ferguson*, the defendant was accused of taking indecent liberties with his daughter. His wife was permitted to testify she "noticed something . . . that looked like semen" on a towel. *Ferguson*, 100 Wn.2d at 140. The court rejected the argument that the testimony was improper because the wife

did not have the scientific expertise needed to identify semen stains. The court stated:

> [The wife] did not testify that the stains were in fact semen stains. She testified that they appeared to be semen stains based upon her prior experience. This testimony is clearly within the scope of ER 701, which allows opinion evidence by lay witnesses.

*Ferguson*, 100 Wn.2d at 141.

Like *Ferguson*, Officer Riley did not testify the substance on the frame was in fact semen, but only that it appeared to be semen or some other bodily fluid based on his prior experience. ER 701 allows such testimony in the form of opinions or inferences by lay witnesses if the testimony is rationally based on the witness' perception and is helpful to a clear understanding of the testimony or the determination of a fact in issue. ER 701. The trial court has wide latitude about admitting such evidence. 5A K. Tegland, Wash. Prac., *Evidence* § 281, at 347 (3d ed. 1989). As noted by the trial court, the issue is not one of admissibility, but goes to the weight given the evidence.

Halstien argues the officer's testimony should have been excluded under ER 403 because the probative value of the testimony was outweighed by the danger of unfair prejudice. Even if the evidence were inadmissible as unduly prejudicial, it would not be reversible error unless it was reasonably probable that the outcome of the trial was materially affected. *Tharp*, 96 Wn.2d at 599. In this case, nothing in the trial court's findings and conclusions appears to have given the testimony any weight, and the finding of sexual motivation did not depend on the officer's testimony. Therefore, the testimony did not materially affect the outcome of the trial and is not reversible error.

## C

Halstien argues the evidence was insufficient for the trial court to find his motive at the time of the burglary was sexual gratification. A trial court's findings of fact will not be disturbed on appeal if supported by substantial evidence. *World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 387, 816

P.2d 18 (1991), *cert. denied,* ___ U.S. ___, 118 L. Ed. 2d 391, 112 S. Ct. 1672 (1992) (citing *Bering v. Share,* 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed,* 479 U.S. 1050 (1987)). Substantial evidence exists where the record contains a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the allegation. *World Wide Video,* 117 Wn.2d at 387.

In reviewing the evidence, the Court of Appeals stated:

> Here, Halstien surreptitiously entered the victim's home by breaking and crawling through a bathroom window, explored her house, took a vibrator and a box of condoms from a nightstand next to the bed where she was sleeping, examined several photographs of her, and did not take any of her valuable personal property. These facts alone suggest that sexual gratification was one of Halstien's purposes in committing the burglary. In addition, the nature of his prior contacts with [C.B.] indicated that he had, at minimum, a strong personal interest in her. . . . Regardless of whether Halstien's obsession was properly characterized as "abnormal", or whether his lurking is indicative of sexual motivation, the evidence is sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that sexual gratification was one of Halstien's purposes in committing the burglary.

*Halstien,* 65 Wn. App. at 851-52.

We concur. A sufficient quantity of evidence was presented for the trial court to conclude that one of Halstien's motives for committing the burglary was sexual gratification.

## IV

We turn last to the issue raised by Halstien in his motion to supplement his petition for review. Halstien argues he does not have to register under RCW 9A.44.130, which requires any adult or juvenile convicted of a sex offense to register as a sex offender. It is unclear whether a juvenile such as Halstien has to register. The registration statute defines "sex offense" as including felonies committed with a finding of sexual motivation under the *adult* sexual motivation statute, RCW 9.94A.127, but does *not* include felonies committed with sexual motivation under the *juvenile* statute, RCW 13.40.135. *See* RCW 9A.44.130(6); RCW 9.94A-.030. Therefore, juveniles convicted under RCW 13.40.135 do

not appear to have committed a "sex offense" as that term is defined in the registration statute.

 Regardless, we do not address this issue because it was not raised on appeal. An issue not raised or briefed in the Court of Appeals will not be considered by this court. *State v. Laviollette*, 118 Wn.2d 670, 679, 826 P.2d 684 (1992). This issue also does not appear to be ripe for review. The trial court did not order Halstien to register, but simply notified him of the potential registration requirement pursuant to RCW 10.01.200. Any registration requirement would not begin until after Halstien has completed his sentence. If, at that time, Halstien believes he does not have to register and wants to challenge the application of the statute to him, he may petition the superior court for relief according to the procedure provided in the statute. *See* RCW 9A.44.140(3).

## V

We hold the juvenile sexual motivation statute, RCW 13.40.135, is not unconstitutionally vague or overbroad. The evidence of Halstien's prior contacts with C.B. and the officer's testimony were properly admitted, and the evidence was sufficient to support the trial court's finding that Halstien committed the burglary for sexual gratification. We also conclude the motion to supplement the petition for review was improvidently granted, and we do not reach the issue of the registration requirement. The Court of Appeals and Halstien's conviction for second degree burglary with a finding of sexual motivation are affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, and MADSEN, JJ., concur.