

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68207-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MARIO GARCIA-BONILLA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: June 17, 2013 |

SPEARMAN, J. — Mario Garcia-Bonilla challenges his convictions for first degree burglary, first degree assault, second degree assault (domestic violence) and violation of a no-contact order (domestic violence). He argues that the trial court erred when it admitted evidence of Garcia-Bonilla's prior acts of violence against one of the victims. Because Garcia-Bonilla does not dispute that the evidence was properly admitted to establish a motive for the crimes, we affirm his convictions.

## FACTS

Garcia-Bonilla was involved in a romantic relationship with Mayra Ramirez-Diaz between approximately 2000 and 2006. After Ramirez-Diaz ended the relationship, Garcia-Bonilla made several attempts to reconcile with her. On August 27, 2006, Garcia-Bonilla came to Ramirez-Diaz's apartment asking to speak with her; when she told him to leave, he kicked and broke her door. Neighbors heard the commotion and called 911 but Garcia-Bonilla had left the scene by the time law enforcement arrived. Ramirez-Diaz was afraid and went to stay with her mother that night. The following day, when Ramirez-Diaz entered her apartment, she found Garcia-Bonilla asleep on her

floor. Garcia-Bonilla pled guilty to first degree criminal trespass (domestic violence) and third degree theft (domestic violence). The sentencing court issued an order prohibiting Garcia-Bonilla from contacting Ramirez-Diaz until October 6, 2008.

On October 4, 2007, Garcia-Bonilla came to Ramirez-Diaz's apartment, knocked on the door and windows, and attempted to persuade Ramirez-Diaz to come back to him. He did the same thing on October 5, 2007, and Ramirez-Diaz called 911. When law enforcement arrived, they were unable to locate Garcia-Bonilla.

On October 13, 2007, Garcia-Bonilla entered Ramirez-Diaz's apartment while Ramirez-Diaz was there with a new boyfriend. Ramirez-Diaz's boyfriend locked himself in the bathroom and called 911. Garcia-Bonilla had left the scene when law enforcement arrived.

On April 5, 2008, Ramirez-Diaz took her mother to a doctor's appointment. When she returned to her apartment, Garcia-Bonilla was there. Garcia-Bonilla demanded to know where Ramirez-Diaz had been, accused her of being with another man, and grabbed her by her hair. Ramirez-Diaz was afraid Garcia-Bonilla would hit her because "[h]e always hit me." Report of Proceedings (RP) (8/31/11) at 31. Garcia-Bonilla later convinced Ramirez-Diaz not to call the police.

On May 1, 2008, Ramirez-Diaz and her seven-year-old son Ernesto were passengers in a car being driven by Jose Bardales-Munoz, a friend of Ramirez-Diaz's. When the car was stopped at a stop sign, Garcia-Bonilla approached, opened the car door, and tried to grab Ernesto. Ramirez-Diaz freed her son from Garcia-Bonilla's grasp. Garcia-Bonilla continued to scream at Ramirez-Diaz and Bardales-Munoz as they drove

away. A protective order was entered prohibiting Garcia-Bonilla from contacting Ramirez-Diaz until June 2, 2013.

Ramirez-Diaz suffers from an illness that has left her with brain lesions and a seizure disorder, and is dependent on multiple medications to survive. In early July 2008, Ramirez-Diaz began experiencing forgetfulness, headaches, nausea and dizziness. The nausea caused her to throw up her seizure medications for a few days, and when she was admitted to the hospital, her brain was showing frequent seizure activity. Doctors gave Ramirez-Diaz high dosages of anti-convulsant medication to stop the seizures, but the high dosage had the side effect of causing Ramirez-Diaz to experience hallucinations, paranoia and delirium. Once doctors adjusted the medications, Ramirez-Diaz's condition improved, and she was released from the hospital a few days later.

On August 3, 2008, Ramirez-Diaz hosted a barbecue at her apartment, attended by her son Ernesto, her sister Hety, her brother-in-law Rosendo, her adult niece Carolina, and Bardales-Munoz. Around 11:00 p.m., Bardales-Munoz went to sleep in Ramirez-Diaz's bedroom. Ramirez-Diaz and her son went to sleep next to Bardales-Munoz around 12:30 or 1:00 a.m. Hety and Rosendo went to sleep in another bedroom. Carolina stayed awake using her computer at the dining room table.

Early in the morning, Carolina saw Garcia-Bonilla enter the apartment through a sliding glass door that had a broken lock. She saw a knife in Garcia-Bonilla's hand and froze in fear. Garcia-Bonilla walked towards the bedrooms and Carolina heard a noise "like ahh," at which point she screamed. RP (11/9/11) at 116-118.

Bardales-Munoz felt something near his stomach and woke up. He kicked with his foot, striking someone, and turned on the light. He realized he had been stabbed in the abdomen, and saw Garcia-Bonilla standing over him with a knife in his raised hand. Ramirez-Diaz was awoken by a groan. When the light came on, she saw Garcia-Bonilla with a knife in his raised hand, making a movement towards her. Garcia-Bonilla then fled the bedroom.

Hety woke up when she heard Carolina scream. She opened the bedroom door and saw Garcia-Bonilla walk down the hallway and exit the apartment through a sliding glass door.

The State charged Garcia-Bonilla with first degree burglary (Count I); first degree assault for the attack on Bardales-Munoz (Count II); second degree assault (domestic violence) for the attack on Ramirez-Diaz (Count III); and violation of a no-contact order (domestic violence) (Count IV). Counts I, II and III carried deadly weapon enhancements.

Garcia-Bonilla filed a trial memorandum in which he outlined his theory of the case. He claimed that he was never inside the apartment and that Ramirez-Diaz stabbed Bardales-Munoz herself while suffering from paranoia and delusions related to her illness. He further asserted that, because Ramirez-Diaz was not a legal resident of the United States, she and her family had fabricated the allegations to prevent her from being deported to her native Guatemala where she would not be able to receive crucial medical treatment.

Prior to trial, the State sought to admit evidence of Garcia-Bonilla's prior acts of violence towards Ramirez-Diaz pursuant to ER 404(b): (1) the incident in which Garcia-Bonilla was discovered sleeping on her floor on August 27-28, 2006; (2) the incident where Garcia-Bonilla knocked on her door and windows on October 4-5 2007; (3) the incident in which Ramirez-Diaz's male friend locked himself in a bathroom on October 13, 2007; (4) the incident where Garcia-Bonilla grabbed Ramirez-Diaz's hair on April 5, 2008; and (5) the incident where Garcia-Bonilla attempted to grab Ramirez-Diaz's son from the car on May 1, 2008. The State argued that the acts were admissible to: (1) show that Ramirez-Diaz had reasonable apprehension and imminent fear of bodily injury during the attack; (2) determine Garcia-Bonilla's motive behind the attacks; and (3) establish Ramirez-Diaz's credibility in light of the defense's theory of the case.

The trial court found that the State had proven the incidents by a preponderance of the evidence. The trial court admitted the August 27-28, 2006, October 4-5, 2007, October 13, 2007 and April 5, 2008 incidents to help the jury assess Garcia-Bonilla's motive and Ramirez-Diaz's credibility. The trial court also admitted the August 27-28, 2006, October 13, 2007 and April 5, 2008 incidents to establish Ramirez-Diaz's reasonable apprehension and fear. The May 1, 2008 incident was admitted only to show that Bardales-Munoz was capable of identifying Garcia-Bonilla as the assailant but not for any other purpose. The jury was instructed as follows:

> Evidence has been introduced in this case regarding allegations of the defendant's past acts against Mayra Ramirez-Diaz before August 4, 2008. This evidence has been introduced for the limited purpose of assessing the defendant's alleged motive and assessing Mayra Ramirez-Diaz's credibility. Further, this evidence may be considered in evaluating Mayra

No. 68207-5-1/6

Ramirez-Diaz's alleged fear and state of mind for Count III. You must not consider this evidence for any other purpose.

Clerk's Papers (CP) at 75.

A jury convicted Garcia-Bonilla on all four counts[1], returning deadly weapon special verdicts on Counts I, II and III. Garcia-Bonilla appeals.

## DECISION

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008). A trial court abuses its discretion if it acts on untenable grounds or for untenable reasons. Magers, 164 Wn.2d at 181. "Failure to adhere to the requirements of an evidentiary rule can be considered an abuse of discretion." State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) (quoting State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001)).

Under ER 404(b), a court is prohibited from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." But such evidence is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Before admitting ER 404(b) evidence, a trial court must:

> (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

---

[1] The State amended Count IV from a felony to a misdemeanor at the close of the defense case.

-6-

This analysis must be conducted on the record. If the evidence is admitted, a limiting instruction must be given to the jury. Foxhoven, 161 Wn.2d at 175.

Garcia-Bonilla argues the trial court erred when it admitted the evidence of prior threatening acts to show Ramirez-Diaz's apprehension and fear of bodily harm or to establish her credibility. But Garcia-Bonilla does not dispute that the evidence was admissible to show his motive for the attacks. We will affirm the trial court's decision to admit evidence under ER 404(b) if one of the court's cited bases is justified. State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995).[2]

Because the evidence was properly admitted to establish motive, the trial court did not err. "[M]otive goes beyond gain and can demonstrate an impulse, desire, or any other moving power which causes an individual to act." Powell, 126 Wn.2d at 259. Garcia-Bonilla had previously attempted to rekindle his relationship with Ramirez-Diaz. He had been violent with her when he believed she was seeing other men, and threatening towards male companions in her company. The evidence was relevant to establish that Garcia-Bonilla's assault on Bardales-Munez and Ramirez-Diaz was motivated by jealousy.

Moreover, even if the admission of the evidence had been in error, any such error was harmless. The erroneous admission of prior bad acts evidence under ER 404(b) "requires reversal only if the error, within reasonable probability, materially

---

[2] Because the evidence was admitted for a permissible purpose, we need not address Garcia-Bonilla's claims that the trial court erred in admitting it for the purposes of Ramirez-Diaz's reasonable apprehension or to establish her credibility.

affected the outcome of the trial." State v. Halstien, 122 Wn.2d 109, 127, 857 P.2d 270 (1993) (quoting, State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). Here, four eyewitnesses saw Garcia-Bonilla in Ramirez-Diaz's apartment: Hety, Carolina, Ramirez-Diaz and Bardales-Munoz. Carolina saw Garcia-Bonilla walk towards Ramirez-Diaz's bedroom with a knife in his hand, heard a noise, and saw Garcia-Bonilla flee the apartment through a sliding glass door. Ramirez-Diaz saw Garcia-Bonilla make a threatening movement towards her holding a knife. And Bardales-Munoz identified Garcia-Bonilla as the man who stabbed him. The overwhelming evidence of Garcia-Bonilla's guilt leads us to conclude that the outcome of his trial was not materially affected by the admission of the ER 404(b) evidence.

Affirmed.

Spearman, J.

WE CONCUR: