IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  35478-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LUIS ALBERTO LUNA LANDEROS, | ) | |
| also known as LUIS A. LANDEROS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Luis A. Landeros broke into a Spokane home and

had an encounter with a woman in her bedroom.  Based on these and other actions that

night, the superior court in a bench trial convicted him of first degree burglary with

sexual motivation.  On appeal, he contends the evidence is insufficient to prove the

sexual motivation sentencing enhancement.  He also challenges a community custody

provision that requires him to obtain prior approval from his community custody officer

(CCO) or therapist before entering into a romantic or sexual relationship.  The State

concedes that the community custody condition is unconstitutionally vague.  We hold

that the evidence is sufficient to support the sexual motivation enhancement and affirm.

But we remand for removal of the community custody condition.

FACTS

Mildred Morris lived with her brother, Doug Soapes (Doug), in north Spokane. Another brother, Jerry Soapes (Jerry), lived next door. On the night of December 18, 2015, Doug went to bed at around 10:30 p.m. while Ms. Morris drank and visited at Jerry's home. At around 1:30 a.m., Jerry walked Ms. Morris back to her house. He then returned to his own house. Ms. Morris warmed up chili in her kitchen, ate it in her bedroom, and then went to bed.

Several hours later, Ms. Morris woke to find a man on her bed. She had never seen the man before. She later told police that the man climbed on top of her, pushed her face into the pillow, and said, "'It's okay. It's okay,'" as he touched her hair. Report of Proceedings (RP) at 102. Ms. Morris managed to get out of her bed and ran down the hall to Doug's room.

Doug testified that his sister was hysterical when she woke him up. He went to investigate and found Mr. Landeros, wearing only jeans and socks, standing in Ms. Morris's room. When confronted, Mr. Landeros said, "'Me and her, we had a couple of beers.'" RP at 69. Doug punched Mr. Landeros in the face and then tried to force him out of the house. When the two of them reached the kitchen, Doug saw that the sliding glass door that led outside from the kitchen had been shattered.

In the meantime, Ms. Morris had called 911, and the police arrived at around 7:15 a.m. After arresting Mr. Landeros at the kitchen door, the officers found an unused

condom on Ms. Morris's bed, an empty condom package on her bedroom floor, and opened cabinets in the basement. Ms. Morris stated that she did not own the condom. She also said that the basement cabinets had been closed and that the kitchen slider had been intact before she went to bed. Officers found a pair of shoes on top of the snow outside the kitchen, foot impressions in the snow on a barrel outside the kitchen window, and the screen of the kitchen window pried open. It appeared to the officers that the slider had been shattered with a flower pot that was found broken on the kitchen floor. Ms. Morris later found in her room a shirt and sweater that did not belong to her or her brothers.

The State charged Mr. Landeros with first degree burglary with a sexual motivation sentence enhancement. He waived his right to a jury trial. His defense at trial was that all of the witnesses were unreliable because they had been drinking heavily, the State presented no physical evidence that he had broken the kitchen slider or touched Ms. Morris, and he was guilty—at most—of trespass or residential burglary. After hearing evidence from Ms. Morris, her brothers, and police officers, the court found him guilty as charged.

The trial court imposed a 42-month minimum sentence, including a 24-month enhancement for the finding of sexual motivation. RCW 9.94A.533(8)(a). His term of community custody is life. RCW 9.94A.507(1)(a)(ii), (3). One of the conditions of community custody imposed by the trial court states "[t]hat you do not enter into

3

romantic/sexual relationships without the prior approval of your CCO and/or Therapist and not without disclosing your criminal history as verified by your CCO and/or Therapist." Clerk's Papers (CP) at 97.

## SEXUAL MOTIVATION ENHANCEMENT

Mr. Landeros challenges the sufficiency of the evidence to support the sexual motivation sentence enhancement. He contends the State's evidence does not prove beyond a reasonable doubt that he committed first degree burglary for sexual gratification.

In 1990, the Washington Legislature enacted the "Community Protection Act," which authorizes the prosecutor to allege sexual motivation as an aggravating factor in sentence enhancements for crimes other than sex offenses. LAWS OF 1990, ch. 3, §§ 601, 603 (codified at RCW 9.94A.835; RCW 9.94A.535(3)(f)); *State v. Halstien*, 122 Wn.2d 109, 115, 857 P.2d 270 (1993). "Sexual motivation" means that one of the defendant's purposes in committing the crime was sexual gratification. RCW 9.94A.030(48); *State v. Murray*, 190 Wn.2d 727, 733-34, 416 P.3d 1225 (2018). "Sexual gratification" refers to a motivation to stimulate or gratify sexual desire. *Halstien*, 122 Wn.2d at 119-20. The State must prove the allegation of sexual motivation beyond a reasonable doubt, with evidence of identifiable conduct by the defendant while he or she was committing the crime. *State v. Vars*, 157 Wn. App. 482, 494, 237 P.3d 378 (2010). This conduct is not

4

limited to criminal sexual contact, which would be charged properly under one of the sex offense crimes. *Halstien*, 122 Wn.2d at 120-21.

Mr. Landeros challenges the evidentiary basis of the trial court's finding of sexual motivation. We view the evidence and the inferences arising from that evidence in the light most favorable to the State and determine whether any rational fact finder could have found sexual motivation beyond a reasonable doubt. *See State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014) (general standard of review for sufficiency of the evidence to support a criminal conviction). Because this was a bench trial, our review is limited to determining whether substantial evidence supports the findings of fact, and whether those findings support the conclusions of law. *Id.* at 105-06. "Substantial evidence" is the quantum sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* at 106. "We review challenges to a trial court's conclusions of law de novo." *Id.*

The trial court here entered several findings that Mr. Landeros contends are not supported by the evidence:

> 10. Millie Morris had never seen the defendant prior to awaking to him *lying next to her* in her bed in the early morning hours of December 19, 2015.
> . . . .
> 12. When Millie Morris awoke the defendant was *lying next to her in her bed* and he had no shirt on.
> 13. The defendant *stroked her hair*, pushing her head into the pillow firmly, more than softly, and whispered, "Its ok," "Its ok."
> . . . .

15. The totality of the circumstances presents as horrifying for *a single woman alone* in what she thought was the safety of her home and bedroom.

CP at 100 (emphasis added). Mr. Landeros argues that Ms. Morris did not testify that he was lying next to her when she woke up, never used the word "stroke" (which he contends has a sexual or intimate connotation), and was not alone in the house she shared with her brother.

It is correct that Ms. Morris testified in court that Mr. Landeros was sitting—not lying—on the bed when she first became aware of him. She also stated that he was "touching," rather than "stroking," her hair while he said, "'It's okay. It's okay.'" RP at 102. But an officer testified that soon after the incident, Ms. Morris reported that Mr. Landeros was lying on top of her when she woke up. The inferences arising from the evidence substantially support the trial court's findings that Mr. Landeros actually lay on the bed and touched Ms. Morris's hair in an intimate manner. Furthermore, a fact finder could reasonably find that Ms. Morris considered herself "alone" in the safety of her own bedroom. The evidence substantially supports the trial court's findings of fact.

In turn, the findings of fact support beyond a reasonable doubt the trial court's conclusion that at least one purpose of Mr. Landeros's burglary was his sexual gratification. Viewed in the light most favorable to the State, the evidence is sufficient to show that Mr. Landeros removed his shoes outside the house, broke the kitchen slider, entered the house, went to Ms. Morris's room, removed some of his clothes, took a

6

condom from its wrapper, and climbed on top of Ms. Morris. These facts in turn support

a fair-minded fact finder's conclusion that he was motivated at least in part by a desire for

sexual gratification.

## CONDITION OF COMMUNITY CUSTODY

Mr. Landeros challenges the condition of community custody that prohibits him

from engaging in a romantic relationship without prior approval from his therapist or

CCO. As the State concedes, this court recently considered and rejected as

unconstitutionally vague a condition of community custody nearly identical to the one

challenged here. In an unpublished opinion, this court in *State v. Dickerson*, noted at 194

Wn. App. 1014, 2016 WL 3126480, at *5, held that this condition is unconstitutionally

vague because it is open to arbitrary enforcement by CCOs and therapists who have

different ideas about which relationships are romantic.[1] We remain committed to the

analysis in *Dickerson* and therefore accept the State's concession that Mr. Landeros's

judgment and sentence should be remanded to strike the community custody condition

that requires prior approval of "romantic/sexual relationships." *See* CP at 97 (App. H).

---

[1] We note that under GR 14.1, unpublished opinions have no precedential value, but may be cited as nonbinding authorities and accorded such persuasive value as the court deems appropriate.

No. 35478-4-III
*State v. Landeros*

CONCLUSION

The evidence is sufficient to support the trial court's findings of fact, which in turn support beyond a reasonable doubt the conclusion that Mr. Landeros committed the burglary with sexual motivation. We agree with the parties, however, that the condition of community custody requiring the CCO's or the therapist's approval before Mr. Landeros engages in a romantic or sexual relationship is void for vagueness.

Judgment affirmed; remanded to superior court for vacation of the community custody condition requiring prior approval of romantic or sexual relationships.

No costs are awarded to the State in light of Mr. Landeros's continued indigency. RAP 14.2.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

*Result only*

Korsmo, J.

Siddoway, J.

8