[No. 28870-9-I.   Division One.   May 26, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVE HALSTIEN, *Appellant.*

846

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Terri Luken, Deputy,* for respondent.

WEBSTER, A.C.J. — Steven M. Halstien, a juvenile, was convicted of second degree burglary with a finding of sexual motivation. He appeals the finding of sexual motivation, contending that the trial court erred in admitting the victim's testimony regarding her prior contacts with him and a police officer's testimony that a liquid found on a picture frame in the victim's house could have been semen. He asserts that these cumulative errors deprived him of a fair trial on the issue of sexual motivation, that the evidence is insufficient to support a finding of sexual motivation, and that the sexual motivation statute is unconstitutionally vague and overbroad. He further asserts that the court erred in finding that a standard range sentence would effectuate a manifest injustice. We affirm.

## FACTS

Steven M. Halstien began delivering newspapers to Cindy Bienz in June of 1989. He collected for the newspaper at her house once a month, and Bienz saw him in the neighborhood on his bike or skateboard about three times a week. Bienz asked Halstien to stop delivering the paper in April of 1990 because she did not read it every day and Halstien "gave [her] the creeps when he came to the door". According to Bienz, Halstien asked "inappropriate" questions about her Porsche, powerboat, clothes, stereo, and house, and hung around when she was having a Fourth of July party.

A week before the burglary, on a Friday night between 9:30 and 10 p.m., Halstien went to Bienz's house to collect for the paper. When Bienz came to the door, she had watery or bloodshot eyes, was wearing an oversize sweater, and did not have any shoes on. Halstien asked Bienz if he had woken her up and whether she had to get dressed to come to the door. She testified that she thought his questions were inappropriate and that they made her feel "very uncomfortable". Nonetheless, Bienz did not find it odd for

Steven to collect so late because she was rarely home in the evening and Halstien had been unable to collect for 2 months.

At 7:30 a.m. on the morning of November 3, 1990, Bienz awoke to noise, called out, and heard the upstairs window open. She called a friend and the police. Police officers determined that entry had been gained through a bathroom window. Muddy footprints were found in the bathroom, the family room, and in Bienz's bedroom. In the loft area, an orderly box of general photos taken of Bienz and others had been disturbed. Some of the photos were dropped on the floor, and others were in "specific little piles on the chair". One framed photograph of Bienz and her sister had been moved from the kitchen to the sofa of the living room. A vibrator and a box of condoms were missing from Bienz's bedroom. Although there were valuable items in the house, including cash, jewelry, and electronics, no other items were taken. Bienz also testified that beginning in March of 1990, she heard noises after midnight, and in the morning her fence gate would be open.

Officer Shawn T. Riley testified that he dusted for fingerprints on the framed photograph, and noticed a liquid on the frame which could have been semen. He also testified that it could have been something else. The court admitted his opinion over defense counsel's objection.

Detective John Haslip, who investigated the incident, found the vibrator broken open in a park located in back of Bienz's residence. He also found the empty condom box in a trash can. When Detective Haslip contacted Halstien, Halstien admitted that he burglarized the house, but said the burglary had occurred the evening before between 8 and 10 p.m. He stated that he broke into the house to look for money out of anger because Bienz owed him money for the papers. He admitted taking the vibrator and condoms from the bedroom, stating that he did not know why he took them. Halstien also stated that he threw the vibrator

against a tree, kept the condoms, and threw the box away. His description of the events to Detective Haslip indicated that he made "several wanderings through the house", and had been in the house 15 to 30 minutes before Bienz awoke. He made no sexual comments regarding the incident.

The trial court determined that Halstien committed the offense of second degree burglary with sexual motivation. At the disposition hearing, the court found that sentencing Halstien in the standard range would result in a manifest injustice, and sentenced him to a maximum term of 104 weeks at the Department of Juvenile Rehabilitation.

## DISCUSSION

Halstien asserts that the trial court erred in admitting the victim's testimony regarding her prior contacts with him on the basis that the testimony constituted impermissible character evidence, was irrelevant, and was unfairly prejudicial. In particular, Halstien objected to the victim's testimony that Halstien "gave [her] the creeps when he came to the door and collected", because he would ask "inappropriate questions", make comments about her, what she was wearing or doing, or about her stereo or house. He also objected to her testimony that he came to collect a week before the burglary around 10 p.m. at night, asking if he had woken her and whether she had to get dressed to come to the door, and that his questions made her "very uncomfortable".

■ ER 404(b) states:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Any evidence admissible under ER 404(b) may be excluded under ER 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Robtoy*, 98 Wn.2d 30, 42, 653 P.2d 284 (1982). The appellate court

reviews the trial court's rulings for abuse of discretion. *Robtoy*, at 42.

■ We hold that the trial court correctly found that the prior contacts did not constitute prior bad acts under ER 404(b). Since the prior contacts did not constitute prior bad acts, the trial court was not required to state on the record the purpose for admitting the evidence. *See State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986). The trial court apparently found the prior contacts and Bienz's impressions based on those contacts probative of whether Halstien committed the burglary for the purpose of sexual gratification and of his identity as the one who committed the crime. See findings of fact 7, 9. We agree that Bienz's testimony was probative of whether Halstien committed the burglary with the purpose of sexual gratification because it corroborated evidence gathered from the burglary itself of Halstien's personal interest in Bienz. We also agree that the trial court did not abuse its discretion in failing to rule that the probative value of these prior contacts was outweighed by the danger of unfair prejudice.

Halstien further asserts that the trial court erred in admitting as opinion testimony an officer's statement that the substance on a picture frame in the victim's house might have been semen. Since the officer did not know with any certainty that the substance was semen, the probative value of the testimony was outweighed by the danger of unfair prejudice under ER 403 and the trial court abused its discretion in admitting this evidence.

■ An evidentiary error not of constitutional magnitude requires reversal only if the error, within reasonable probabilities, materially affected the outcome of the trial. *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). We find nothing in the findings and conclusions indicating that the trial court gave the officer's statement any weight. Moreover, the finding of sexual motivation did not depend upon the improperly admitted evidence. See *infra*. There-

fore, we are confident that the improperly admitted evidence did not affect the outcome of the trial.[1]

■ We next address Halstien's assertion that the evidence was insufficient to support a finding of sexual motivation. RCW 13.40.135 requires prosecutors to file an allegation of sexual motivation whenever the allegation is supported by sufficient credible evidence. "Sexual motivation", which is an aggravating factor under RCW 13.40.150(3)(i)(v), means that sexual gratification was one of the defendant's purposes in committing the crime.[2] RCW 13.40.020(21). The State has the burden of proving beyond a reasonable doubt that sexual motivation was present at the time the offense was committed. RCW 13.40.135(2). The standard employed in challenging the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential element beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

Here, Halstien surreptitiously entered the victim's home by breaking and crawling through a bathroom window, explored her house, took a vibrator and a box of condoms from a nightstand next to the bed where she was sleeping, examined several photographs of her, and did not take any of her valuable personal property. These facts alone suggest that sexual gratification was one of Halstien's purposes in committing the burglary. In addition, the nature of his prior contacts with Bienz indicated that he had, at minimum, a strong personal interest in her. We hold that the trial court did not abuse its discretion in finding that Halstien was obsessed with Bienz and had a desire to be in her presence.

---

[1]In view of our holding that the trial court made only one evidentiary error, we reject the defense counsel's argument that cumulative errors denied Halstien due process of the law.

[2]We reject the defense counsel's argument that the meaning of sexual gratification should be ascertained by reference to indecent liberties cases. The offense of indecent liberties includes the element of "sexual contact", which is not essential to a finding of sexual motivation. RCW 9A.44.100(1).

Regardless of whether Halstien's obsession was properly characterized as "abnormal", or whether his lurking is indicative of sexual motivation, the evidence is sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that sexual gratification was one of Halstien's purposes in committing the burglary.[3]

■ ■ We next address Halstien's assertion that the sexual motivation statute is unconstitutionally overbroad or vague because it criminalizes one's private thoughts in violation of one's rights to privacy and free speech and does not criminalize any specific conduct. A law is overbroad if it "sweeps within its prohibitions" activities that are constitutionally protected. *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). A statute is "void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *O'Day v. King Cy.*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988). The test for evaluating the vagueness of legislative enactments is whether the enactment provides adequate notice of the conduct prohibited and contains standards to prevent arbitrary enforcement. *State v. Maciolek*, 101 Wn.2d 259, 264, 676 P.2d 996 (1984). A statute is not unconstitutionally vague simply because a person cannot "predict with complete certainty the exact point at which his [or her] actions would be classified as prohibited conduct." *Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366, 78 A.L.R.4th 1115 (1988). Nor is it unconstitutionally vague because of possible disagreement on its application. *See Eze*, at 27.

■ Here, the applicable statute requires that the State prove "beyond a reasonable doubt that the juvenile committed the offense *with* a sexual motivation." (Italics ours.) RCW 13.40.135(2). It further states that the "court shall

---

[3]The defense counsel asserts that the trial court abused its discretion in entering findings of fact 9(a)-(f) and 7(c)-(d) regarding Halstien's sexual motivation. We decline to address whether the trial court abused its discretion in making any of these specific findings that were not discussed in appellant's brief.

make a finding . . . of whether . . . the sexual motivation was *present at the time of the commission of the offense*." (Italics ours.) RCW 13.40.135(2). Inherent in this subsection is the requirement that the finding of sexual motivation be based on some conduct forming part of the body of the underlying felony. The statute does not criminalize sexual motivation. Rather, the statute makes sexual motivation manifested by the defendant's conduct in the course of committing a felony an aggravating factor in sentencing. We therefore conclude that the statute is neither overbroad nor vague.

■ Lastly, we address Halstien's assertion that the trial court erred in imposing a sentence of 104 weeks. When a juvenile defendant is found to be a middle offender, a disposition outside the standard range may be imposed only if the trial court concludes that a standard range sentence would result in manifest injustice. RCW 13.40.160(4)(c). A disposition effectuates manifest injustice if it "would impose a serious, and clear danger to society in light of the purposes of this chapter". RCW 13.40.020(12). The purposes of the Juvenile Justice Act of 1977 are listed in RCW 13.40.010(2) and include the following:

> (a) Protect the citizenry from criminal behavior;
> . . . .
> (c) Make the juvenile offender accountable for his or her criminal behavior;
> (d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender;
> . . . .
> (f) Provide necessary treatment, supervision, and custody for juvenile offenders;

We are mindful of *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991), in which the Supreme Court recently held that future dangerousness is not a factor justifying imposition of an exceptional sentence under the Sentencing Reform Act of 1981 (RCW 9.94A). In view of RCW 13.40.020(12), this rule does not apply under the Juvenile Justice Act of 1977. Moreover, we note that under the Sentencing Reform Act of 1981, a felony with a finding of sexual motivation is a sex offense. RCW 9.94A.030(29)(b).

Review of a disposition outside the standard range is governed by RCW 13.40.230(2), which states:

> To uphold a disposition outside the standard range, or which imposes confinement for a minor or first offender, the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range, or nonconfinement for a minor or first offender, would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.

RCW 13.40.230(2) sets forth a 3-part test. *State v. P*, 37 Wn. App. 773, 686 P.2d 488 (1984). First, "the reasons given by the trial court must be supported by the record".[4] Second, "those reasons must clearly and convincingly support the disposition". Third, "the disposition cannot be too excessive or too lenient." *State v. P*, at 777 (quoting *State v. Rhodes*, 92 Wn.2d 755, 760, 600 P.2d 1264 (1979)).

Here, Halstien's standard range was 5 to 10 days of detention, 24 to 40 hours of community service, 3 to 6 months of community supervision, and up to a $25 fine. The trial court found that this sentence would effectuate a manifest injustice because Halstien presented a "clear and present danger to the community." The conclusion that Halstien presented a "clear and present danger" rests on the trial court's findings that Halstien committed another second degree burglary less than 3 months after the one in question, exhibited "obsessive, predatory behavior" and presented "a high risk to reoffend" absent intervention.

Halstien asserts that the finding of "obsessive, predatory behavior" is not supported by the record because it rests on improperly admitted evidence. We have already determined that admitting evidence of Halstien's prior contacts with the victim was proper under ER 404(b) and ER 403. See *supra.* The victim was asleep during the burglary and Halstien was in her home for approximately 10 to 15 minutes looking at photographs of her and taking only very personal items.

---

[4]We reject the defense counsel's argument that the evidence must support the reasons given beyond a reasonable doubt.

Halstien's obsession with the victim is further manifested by comments made to her over a period of time about her or her belongings, by Halstien's admission to the evaluator that he was sexually attracted to the victim before the incident occurred, and by Halstien's sexual deviancy evaluation, which indicated "a moderate degree of sexual obsession". As to predatory conduct, in the months preceding the burglary, the victim began to notice screens missing from the exterior of the house, mostly in the area of her bedroom. She would find the screens with burn holes in them near the window latches. Halstien admitted that he burned holes in the screens at the time of the burglary. The evidence in total suggests that he had been stalking the victim in her home for months prior to the actual burglary. We conclude that the evidence in the record supports the trial court's finding of "obsessive, predatory behavior".

Halstien also asserts that the record does not support that evaluator's finding that he presented a high risk to reoffend. Although a psychologist indicated based on his review of Halstien's responses to one test that he "*may* have a high potential for aggression due to his impulsivity, low self-worth, depression and poor judgment" (italics ours), the evaluator nevertheless concluded based on the results of several other tests that Halstien presented a high risk to reoffend because of his pattern of denial, the predatory nature of the offense, his frequent possession of knives or sticks, his emotional instability, and his continued involvement in criminal behavior. The evaluator specifically found Halstien at a high risk to commit further *sex* crimes. We conclude that the trial court's finding that Halstien presented a high risk to reoffend is supported by substantial evidence.

Halstien further asserts that the reasons given by the trial court do not support the conclusion that a sentence in the standard range would result in a manifest injustice. Defense counsel specifically attacks the trial court's statement that a commitment of 104 weeks at the Department of Juvenile Rehabilitation was appropriate, in part because

"[t]he respondent has a right to treatment, and the failure of the State to provide him adequate and appropriate treatment would be in violation of the statute." The finding of manifest injustice is clearly and convincingly supported by the reason that Halstien presented a "clear and present danger" to the community. The trial court specifically found that Halstien was not a good candidate for community-based treatment under the special sex offender disposition alternative (RCW 13.40.160(5)) because of the danger he presented to society. Imposing a sentence long enough to provide necessary treatment not only furthers the objective of protecting society, but also is a stated objective of the Juvenile Justice Act of 1977. *See* RCW 13.40.010. We hold that the reasons support the finding of manifest injustice.

■ A sentence is "clearly excessive" only when it cannot be justified by any reasonable review of the record. *State v. Tauala*, 54 Wn. App. 81, 87, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989). Here, the sentence is justified by Halstien's danger to the community and his need for treatment in a secure setting and is not clearly excessive.

The judgment is affirmed.

COLEMAN and FORREST, JJ., concur.

Review granted at 120 Wn.2d 1012 (1992).