[No. 28171-6-II.   Division Two.   September 9, 2003.]

HEESAN CORPORATION, *Appellant*, v. THE CITY OF LAKEWOOD, ET AL., *Respondents*.

342

*Gilbert H. Levy*; and *Jeannette D. Jameson* (of *Law Offices of J.J. Jameson*), for appellant.

*Dennis J. La Porte* (of *Krilich, La Porte, West & Lockner, P.S.*) and *Philip I. Brennan*, for respondents.

HOUGHTON, J. — Heesan Corporation appeals a summary judgment order affirming revocation of Heesan's city of Lakewood business and adult cabaret license. Heesan raises several constitutional arguments supporting reversal. Finding no error, we affirm.

## FACTS

Heesan Corporation bought the New Players Club (Club) from Jin's Enterprises, Inc. Some time before the sale, the city of Lakewood (Lakewood) revoked Jin's business license for violating Lakewood's adult cabaret ordinance. The parties, including Heesan, resolved Jin's license dispute through a settlement agreement, which allowed Heesan to purchase and continue to operate the Club under certain conditions.[1] Heesan kept the Club open and employed several of the dancers and managers that Jin's had employed.

---

[1] In the settlement agreement, Heesan acknowledged that

employees and entertainers at the New Players Club, under the operation of Jin's Enterprise, [had] been convicted of violating the Adult Cabaret Ordinance, and that the adult cabaret license of Jin's Enterprise [had] been ordered to be revoked. . . . Heesan [was] put on notice that the provisions of the City of Lakewood's Adult Cabaret Ordinance and other applicable codes and regulations will be strictly enforced.

1 Clerk's Papers (CP) at 86.

The Club features erotic dancing, with a main stage in the center and a variety of private booths near the stage. Between January and February 2000, the Pierce County Sheriff's Department conducted numerous undercover operations at the Club to investigate possible Lakewood Municipal Code (LMC)[2] violations.

During these investigations, the officers observed numerous LMC violations. They saw dancers engage in various types of sexual conduct in exchange for money, perform at a distance of fewer than four feet from the audience, and make improper physical contact with customers. The dancers also accepted tips directly from the customers and offered to perform various sexual acts for money.

One of the officers observed a patron consume alcohol in a manager's view, and another officer smelled marijuana on the premises. The dancers also smoked marijuana and drank liquor in the dressing room and dealt drugs on the premises. The Club managers acted as lookouts while the dancers performed prohibited activities.

On March 3, 2000, Lakewood gave Heesan notice of its intent to revoke its business and adult cabaret license and to declare the Club a public nuisance based on the LMC violations. Heesan appealed the notice and requested a hearing.

After the hearing, a Lakewood hearing examiner (Examiner) issued findings of fact, conclusions of law, and a decision (1) affirming Lakewood's decision to revoke the

---

[2] LMC 05.16.050 sets forth "Standards of Conduct and Operation—Adult Cabarets," including prohibitions relating to dance performance, sexual conduct, payment form, and drug and alcohol consumption. CP at 78-81.

Club's license[3] and (2) declaring it a public nuisance under LMC 05.16.100.[4] 1 Clerk's Papers (CP) at 82.

Heesan then filed a summons and petition for writ of review[5] of the Examiner's decision and a complaint for injunctive and declaratory relief and damages under 42 U.S.C. § 1983. Heesan raised various state and federal constitutional arguments. It further alleged that Lakewood adopted the LMC provisions at issue in violation of the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW.

Lakewood responded and asked the court to affirm the Examiner's decision. Lakewood also moved for summary judgment, arguing that no issues of material fact arose on Heesan's constitutional or procedural claims.

The trial court found: (1) substantial evidence supported the revocation; (2) the applicable LMC was constitutional; and (3) Heesan had no standing to challenge the OPMA because the Club's license was properly revoked or, even if it did have standing, ample evidence supported the OPMA's constitutionality. The trial court denied the writ, affirmed the Examiner's decision, and granted Lakewood summary judgment. Heesan appeals.

---

[3] Lakewood based its revocation on LMC 05.02.170 provisions:

B. The licensee has failed to comply with any of the provisions of this Ordinance;

C. The licensee, or licensee's employees or agents, have been convicted of a crime, or suffered civil judgment or consent decree which bears a direct relationship to the conduct of the business licensed pursuant to this Ordinance;

. . . .

E. The licensee has caused or permitted a public nuisance to exist;

F. The licensee, or licensee's employees or agents, have engaged in, have permitted or have acquiesced in unlawful drug related activity on the business premises;

. . . .

H. Licensee's continued conduct of the business will, for any other reason, result in a danger to public health, safety or welfare.

1 CP at 108.

[4] Under LMC 05.02.190(I), the license revocation was stayed pending judicial review. 1 CP at 106.

[5] RCW 7.16.010-.140.

ANALYSIS[6]

State Constitutional Protection

*Article I, Section 5*

Heesan first contends that because it claims the LMC restricts the Club's free expression rights, it is entitled to enhanced protection under the Washington Constitution article I, section 5, as to all of its claims.[7] Heesan asserts that the LMC provisions "authoriz[ing] permanent revocation of [Heesan's] adult cabaret license are overly broad and constitute an impermissible prior restraint of freedom of speech." Appellant's Br. at 16. Heesan further asserts that when Lakewood permanently closed the Club without first pursuing less burdensome alternatives, it violated Heesan's constitutional right to freedom of expression. Heesan sets forth a *Gunwall* analysis to support its state constitutional argument. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986) (holding that the Washington State Constitution extends broader rights to its citizens than the United States Constitution in some circumstances).

■ Our Supreme Court addressed a similar issue in *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 937 P.2d 154 (1997), *cert. denied*, 522 U.S. 1077 (1998). In *Ino Ino*, two adult entertainment corporations and three dancers sought enhanced constitutional protection under article I, section 5 in challenging the constitutionality of the Bellevue Municipal Code regulating adult cabarets. 132 Wn.2d at 110. The court held that "while traditional regulation by municipalities supports independent analysis under the state constitution, it does not support enhanced protection for self-

---

[6] Heesan does not challenge the Examiner's decision, and we accept those findings of fact as verities. *Willapa Grays Harbor Oyster Growers Ass'n v. Moby Dick Corp.*, 115 Wn. App. 417, 432, 62 P.3d 912 (2003). We address Heesan's constitutional and procedural arguments as legal issues, reviewing them de novo. *O'Day v. King County*, 109 Wn.2d 796, 801, 749 P.2d 142 (1988).

[7] "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." WASH. CONST. art. I, § 5.

expression through sexually explicit dancing." *Ino Ino*, 132 Wn.2d at 122.

■ But the court further noted that if the municipality's code placing restrictions on erotic dancing is a prior restraint, enhanced protection may be warranted. *Ino Ino*, 132 Wn.2d at 117. Additionally, in *JJR Inc. v. City of Seattle*, 126 Wn.2d 1, 6, 891 P.2d 720 (1995), our Supreme Court held that when an ordinance prevents performance of protected expression without sufficient procedural safeguards, it may constitute an unconstitutional prior restraint subject to enhanced protection. *JJR Inc.*, 126 Wn.2d at 10-11 (administrative licensing scheme must provide for a stay of an adult entertainment license revocation or suspension pending judicial review).

Here, under the *JJR Inc.* analysis, to warrant enhanced protection, Heesan must show that the LMC restrictions rise to a level of prior restraint[8] and that the LMC does not include adequate procedural safeguards. *Ino Ino*, 132 Wn.2d at 117. Heesan fails to do so.

■ LMC 05.02.190(I) states that "[e]nforcement of any suspension or revocation of any business license, or other order . . . by the City Manager, or designee, shall be stayed during the pendency of an appeal therefrom which is properly and timely filed." 1 CP at 106. This meets the minimum procedural safeguards of a mandatory stay as stated in *JJR Inc.* Here, nothing has been restrained because Heesan is free to operate its business pending the resolution of the appeals process. The LMC provides sufficient safeguards. Thus, the LMC's restrictions are not a prior restraint triggering greater state constitutional protection. *See JJR Inc.*, 126 Wn.2d at 9.

---

[8] Prior restraint may occur in two ways: (1) when " 'official restrictions [are] imposed upon speech or other forms of expression in advance of actual publication' "; (2) when "expression is foreclosed prior to an 'adequate determination that it is unprotected by the First Amendment.' " *State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 776, 765 P.2d 281 (1988) (quoting *State v. Coe*, 101 Wn.2d 364, 372, 679 P.2d 353 (1984) and *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390, 93 S. Ct. 2553, 37 L. Ed. 2d 669 (1973)).

*License Revocation*

Heesan further asserts that its license revocation is a prior restraint because it "permanently silences all expression in the New Player's Club, including legal and protected expression." Resp't's Br. at 29. It argues that a question of fact remains on this issue.

■ As already discussed, we decline to extend the full protection of article I, section 5 to licensure of nude dancing, observing that nude dancing " 'clings to the edge of protected expression.' " *Ino Ino*, 132 Wn.2d at 116 (quoting *JJR Inc.*, 126 Wn.2d at 9). Because Heesan is not entitled to enhanced protection, we look to see if minimum procedural safeguards are met before deeming a license revocation a prior restraint against nude dancing. *See JJR Inc.*, 126 Wn.2d at 9.

■ The Examiner decides license revocation appeals and may adopt "reasonable rules and regulations for conducting such appeals." LMC 05.02.190(A) (1 CP at 105). In issuing the revocation here, the Examiner considered license suspension as an option and considered that there was a moratorium on issuance of new licenses. But the Examiner ultimately decided not to grant a suspension primarily because Heesan did not produce any explanation to warrant suspension. Instead, the Examiner noted, Heesan had acted in a systematic way to permit unlawful conduct.

The LMC meets the procedural safeguards and revoking the Club's license was not an impermissible prior restraint.

Statutory Overbreadth and Vagueness

*Overbreadth*

Heesan next contends that the LMC license revocation provisions found in LMC 05.02.170[9] are too general and overbroad, do not warn the licensee about potential viola-

---

[9] One of the grounds for license revocation is failure to comply with the standards of conduct under LMC 05.16.050. *See supra* note 2.

tions, and provide no opportunity for correction. Heesan gives four reasons to support its claim that LMC 05.02.170 is vague and overbroad. 1 CP at 108.

Heesan asserts that: (1) subsection (D) gives city officials unfettered discretion to revoke an adult cabaret license based on even minor technical violations, regardless of whether the licensee knew of or allowed the violations to occur; (2) there is no definition for "public nuisance" under the general licensing provisions of the code, and subsection (E) permits license revocation for violations, regardless of the licensee's knowledge; (3) the phrase "drug related activity" is not defined as it applies to subsection (F), allowing revocation regardless of the licensee's knowledge of the violations and after only one violation should not be sufficient to declare a business a public nuisance and permanently revoke its license; and (4) the phrase "public health, safety or welfare" is not defined as it relates to subsection (H), leaving Lakewood officials with unfettered discretion to define these terms and revoke licenses based on personal, subjective standards. Appellant's Br. at 23-25.

■■ A law is overbroad if it " 'sweeps within its prohibitions' " activities that are constitutionally protected. *State v. Halstien*, 65 Wn. App. 845, 852, 829 P.2d 1145 (1992) (quoting *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)), *aff'd*, 122 Wn.2d 109, 857 P.2d 270 (1993). The United States Supreme Court has upheld a business license revocation where the business also conducted First Amendment protected activities if the reason for the revocation was to curtail unprotected activities. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986).

In *Arcara*, the plaintiffs operated an adult bookstore and allowed illegal prostitution on its premises. 478 U.S. at 698-99. The district attorney sought to close the bookstore because the violations constituted a public health nuisance. *Arcara*, 478 U.S. at 699-700. Similar to Heesan, the plaintiffs claimed that closure of the bookstore would also silence their First Amendment rights. *Arcara*, 478 U.S. at 700. The

Court rejected this argument stating, "Bookselling in an establishment used for prostitution does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises." *Arcara*, 478 U.S. at 707. Similarly, in *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 720 P.2d 818 (1986), our Supreme Court upheld a business closure because the order was issued after violations occurred and when the trial court determined that abatement was the only way to curtail the illegal activities. 106 Wn.2d at 141 (permanent injunction of erotic dance studio proper).

Here, the standards of conduct for adult cabarets set forth in the LMC dictate that employees or entertainers cannot expose certain parts of their bodies, erotically touch or caress any member of the public, perform actual or simulated sexual conduct, perform a dance fewer than four feet from any member of the public, or accept tips directly from members of the public. LMC 05.16.100(A) defines a public nuisance as "[a]ny adult cabaret operated, conducted, or maintained in violation of this chapter or any law of the City of Lakewood or the State of Washington shall be, and the same is, declared to be unlawful and a public nuisance." 1 CP at 82.

Here, Lakewood's adult cabaret code provisions, read as a whole, do not sweep any protected expressions within their prohibitions. Heesan violated numerous provisions, such as allowing dancers to expose certain parts of their bodies; allowing dancers to erotically touch customers and themselves; allowing actual and simulated sexual conduct; allowing dancers to perform closer than four feet from members of the public; and allowing dancers to directly accept tips. LMC 05.16.050(A), (C)(4).[10]

In addition, Heesan also allowed prostitution solicitation and illegal drug activity on its premises. Similar to *Arcara*,

---

[10] LMC 05.16.050(C)(4) states, "The manager shall be responsible for and shall assure that the actions of members of the public, the adult entertainers and all other employees shall comply with all requirements of this Chapter." 1 CP at 78-79.

the curtailed activities do not arise from any protected expressions. *See Arcara*, 478 U.S. at 707. And similar to *Kev, Inc.*, the Club's license was revoked after the violations occurred and acted to curtail the illegal activities. *Kev, Inc.*, 106 Wn.2d at 141.[11] Thus, the ordinance is not overbroad.

## Vagueness

■■ An ordinance or statute is "void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *O'Day v. King County*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988). The test for vagueness is "whether the enactment provides adequate notice of the conduct prohibited and contains standards to prevent arbitrary enforcement." *Halstien*, 65 Wn. App. at 852. We apply the same rules of statutory construction to municipal ordinances as to state statutes. *City of Spokane v. Fischer*, 110 Wn.2d 541, 542, 754 P.2d 1241 (1988).

■ The vagueness doctrine is limited in two significant ways. First, we presume that a statute is constitutional unless its unconstitutionality appears beyond a reasonable doubt, and "the burden of proving a statute's vagueness rests with the party challenging its constitutionality." *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988). Second, impossible specificity standards are not required. *Eze*, 111 Wn.2d at 26. "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Eze*, 111 Wn.2d at 27. "Nor is it unconstitutionally vague because of possible disagreement on its application." *Halstien*, 65 Wn. App. at 852.

---

[11] The Examiner concluded,

[Mr. Pak] set in place a situation which was ripe for a continuation of the prior misconduct. In fact, misconduct not only continued, but actually increased. . . . Therefore, the Hearing Examiner has no choice but to affirm the decision of the Finance Director to revoke this adult cabaret license and declare the New Players Club to be a public nuisance.

1 CP at 29.

██ Here, Heesan does not demonstrate that the ordinance is vague and unconstitutional beyond a reasonable doubt. *See Eze*, 111 Wn.2d at 26. The thrust of its argument seems to be that phrases "public nuisance," "drug related activity," and "public health, safety or welfare" are not defined in the ordinance, giving Lakewood officials unfettered discretion to determine their meaning based on subjective viewpoints. Appellant's Br. at 24-25. But Heesan does not argue that LMC 05.16.050, in conjunction with LMC 05.02.170, provided it inadequate notice of the prohibited conduct. And Heesan raises no facts in this record that Lakewood arbitrarily enforced the LMC. Finally, the ordinance provides for an appeals process to challenge the revocation first to an examiner and then to the superior court. LMC 05.02.190. Heesan's argument fails.

## Preemption

Heesan next contends that the court erred in granting summary judgment because there is a genuine issue of fact whether state law preempts the LMC and mandates a different proceeding here. Heesan asserts that the civil remedy for public nuisance under state law is abatement, which allows for adequate judicial proceedings before a fair and impartial judge, allowing discovery and applying the rules of evidence, rather than an examiner's hearing.

██ ██ Washington's preemption doctrine is well settled. WASH. CONST. art. XI, § 11; *City of Tacoma v. Luvene*, 118 Wn.2d 826, 833, 827 P.2d 1374 (1992). Under article XI, section 11, cities may "enact ordinances prohibiting the same acts prohibited by state law so long as the state enactment was not intended to be exclusive and the city ordinance does not conflict with the general law of the state."[12] *Luvene*, 118 Wn.2d at 833.

RCW 7.48.130 defines public nuisance as "one which affects equally the rights of an entire community or neigh-

---

[12] Article XI, section 11 states, "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

borhood, although the extent of the damage may be unequal." The remedies against a public nuisance are "[i]ndictment or information, a civil action, or abatement." RCW 7.48.200. "A public nuisance may be abated by any public body or officer authorized thereto by law." RCW 7.48.220. But RCW 35.22.280(30) also gives cities the power "[t]o declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue, or suffer nuisances to exist."

In regulating adult cabarets, LMC 05.16.100(A) provides that "[a]ny adult cabaret operated, conducted, or maintained in violation of this chapter or any law of the City of Lakewood or the State of Washington shall be, and the same is, declared to be unlawful and a public nuisance." The remedy for a business permitting such a public nuisance is either a license suspension or revocation. LMC 05.02.170(E).

Here, Lakewood revoked Heesan's license for permitting a public nuisance to exist. Hence, we will look at the preemption issue only as it pertains to the remedies for public nuisance prescribed in RCW 35.22.280 and the LMC.

RCW 35.22.280 does not expressly state an intention to preempt the field of public nuisance. Nor does it indicate that the legislature intended to have sole jurisdiction over public nuisances. To the contrary, the statute states in part,

Any city of the first class shall have power:

. . . .

. . . to provide for the prevention and abatement of nuisances, . . .

[to] declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue, or suffer nuisances to exist.

RCW 35.22.280(29), (30).

Thus, there is no apparent direct conflict between the state statute and the ordinance. The statute gives Lakewood the power to declare and abate nuisances. RCW 35.22.280. Heesan's preemption argument fails.

Due Process and Double Jeopardy

Heesan further contends that the trial court erred in granting summary judgment because the license revocation means that it will be permanently barred from obtaining a license. And such a sanction is excessive, constitutes punishment, is fundamentally unfair, and violates due process and the double jeopardy clause.

██ ██ In *O'Day*, our Supreme Court "conclude[d] that the determinative factors for resolving a double jeopardy claim are whether license revocation has a rational connection to some purpose other than retribution or deterrence, and whether the sanction appears to be excessive in relation to the alternative purpose." 109 Wn.2d at 817. Further, the court held that license revocation did not violate double jeopardy because it was not punishment. *O'Day*, 109 Wn.2d at 817. Rather, the ordinance served a legitimate purpose of protecting the young public from illegal "public sexual contact and from the other types of criminal activity historically linked to the adult entertainment industry." *O'Day*, 109 Wn.2d at 818. The court also observed that a license suspension or revocation for up to one year was not so punitive as to negate the sanction's intention. *O'Day*, 109 Wn.2d at 818.

Here, in revoking Heesan's license, the Examiner stated that the moratorium on issuing new licenses caused Heesan to believe that its revocation was permanent. But Heesan cites portions of the record that do not clearly support its proposition that the license revocation permanently disables it from operating a similar business in Lakewood. It can be reasonably inferred from the record that it is still possible for Heesan to obtain another license once the moratorium has ended. Hence, the sanction was not excessive. The Examiner revoked the business license to curtail the continued and increased illegal conduct, which is consistent with *O'Day*. Thus, Heesan's double jeopardy claim is invalid. And, as discussed above, Heesan's due process rights are not violated because it had a right to judicial review.

## Less Restrictive Alternative

Heesan also argues that Lakewood failed to demonstrate that the sanction was no broader than necessary and that closing the Club was the only way to stop illegal activity on the premises. It asserts that the court erred as a matter of law. In order to prevail on this argument, Heesan must prevail on the enhanced protection argument. As discussed above, Heesan is not entitled to enhanced protection under the state constitution and we decline to further address this issue.

## Open Public Meetings Act[13]

Finally, Heesan argues that the trial court erred in ruling on Heesan's OPMA claim because there are genuine issues of material fact as to whether the adult cabaret ordinance was properly enacted. It also asserts that *Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001), collaterally estops Lakewood from relitigating this issue.[14]

The trial court found, "as to the OPMA issues raised by Heesan, Heesan has no standing to challenge the OPMA and even if it did, there is ample evidentiary support to uphold the constitutionality of the Adult Entertainment Ordinance (LMC 5.16)." 17 CP at 3020. Heesan argues that its license revocation based on chapter 05.16 LMC was improper because the ordinance was enacted in violation of the OPMA because various closed meetings were held before enactment.[15] It cites *Clark* in support of its argument.

In *Clark*, the owner of three closed Lakewood adult businesses challenged the city's adult cabaret ordinance,

---

[13] The OPMA requires, inter alia, that all meetings of the governing body of a public agency be open and public, all persons be permitted to attend any meeting of the governing body, and that notice be given according to the OPMA where the date of the meeting is fixed by law or rule.

[14] Heesan sets forth no analysis on the collateral estoppel issue and we decline to address it. RAP 2.5.

[15] For simplicity, we assume, without so holding, that Heesan has standing to raise this argument.

chapter 05.16 LMC. 259 F.3d at 1001. The plaintiff argued that the ordinance was passed in violation of the OPMA because various closed meetings were held before enactment. *Clark*, 259 F.3d at 1001-02. Because the *Clark* court could not determine which actions took place in open or closed meetings on the record before it, there were genuine issues of fact whether the order was properly adopted. 259 F.3d at 1015.

■■ ■■ A city can rely on different sources as evidence when enacting an ordinance. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986) (city could rely on experiences of other cities in enacting its adult theater zoning ordinance). And an action to adopt an ordinance that takes place at a proper open meeting is valid, even if previous actions that led up to its adoption are held to violate the OPMA. *Org. to Pres. Agric. Lands v. Adams County*, 128 Wn.2d 869, 882-84, 913 P.2d 793 (1996).

Here, the trial court was presented with approximately 2,500 pages of material considered by the planning advisory board and the city council at public meetings. And chapter 05.16 LMC 's preamble references public meetings held and the material considered by the city council and the planning advisory board that were separate from the closed meeting material. 1 CP at 109. Some of this material includes findings from other cities supporting enactment of their adult entertainment ordinances. Representatives from the adult entertainment industry also submitted material and requested to meet the planning advisory board. In addition, owners of adult cabarets were contacted and invited to provide input. Finally, the Lakewood City Council passed the ordinance in an open public meeting.

Here, unlike in *Clark*, ample evidence in the record supports a finding that Lakewood properly enacted its adult

cabaret ordinance in an open and public manner, satisfying the OPMA. Heesan's argument fails.

Affirmed.

QUINN-BRINTNALL, A.C.J., and SEINFELD, J., concur.

Review denied at 151 Wn.2d 1029 (2004).