FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JAN 22 AM 10: 17

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 75392-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANTHONY DYLAN WEBB, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 22, 2018 |

TRICKEY, J. — The State charged Anthony Webb with second degree assault for inflicting substantial bodily harm on Joshua McIntyre. The trial court permitted McIntyre to testify that, prior to being assaulted by Webb, he had reported to police that Webb had stolen beer. The trial court denied Webb's requests for an instruction on third degree assault and an instruction on voluntary intoxication. After Webb was convicted, his judgment and sentence stated that no DNA (deoxyribonucleic acid) sample was required, but the trial court issued an order requiring DNA testing.

Webb appeals, arguing that the trial court erred when it admitted McIntyre's testimony, declined to instruct the jury on assault in the third degree and voluntary intoxication, and issued conflicting orders regarding DNA testing. We remand for vacation of the trial court's order requiring Webb to submit to DNA testing, and otherwise affirm.

## FACTS

On September 13, 2015, McIntyre was fishing and spending time with friends on a beach in Snohomish County. Webb and his friend, Alexander Calpo, arrived at the beach and began to drink from a half gallon of vodka with several of their friends.

Webb confronted McIntyre about an incident that had occurred the prior week. McIntyre had been contacted by the police about Webb's whereabouts, which McIntyre provided. Webb asked McIntyre in an angry manner why he had told the police that Webb had stolen beer and provided his whereabouts.

McIntyre attempted to walk away to a parking lot near the beach, but Webb and Calpo followed him. Webb continued to speak aggressively, and approached to within a couple feet of McIntyre. McIntyre asked Webb to stop. Webb began pushing McIntyre, who said that he did not want to fight.

As McIntyre tried to get into a car, Webb began to punch him in the head, chest, and side. Calpo also began punching McIntyre. McIntyre attempted to defend himself and run away. Webb or Calpo kicked McIntyre's feet from under him and knocked him to the ground. Webb and Calpo proceeded to kick, stomp, and punch McIntyre. Webb and Calpo's assault of McIntyre lasted for 10 to 15 minutes, including occasional breaks. Witnesses to the assault stated that Webb was acting angrily and may have been drinking, but was not slurring his speech.

Two of McIntyre's friends eventually arrived in their vehicle, and McIntyre was able to enter it despite Webb's continuing attacks. McIntyre's friends took him to the Arlington hospital. McIntyre received five stitches for a cut on his face, which

resulted in a one-inch scar. He also reported that parts of his back were very sore, although they did not bruise immediately. Nine days after the incident, pictures were taken of McIntyre's scar and a large bruise on his back shaped like a shoe print.

Deputy Ryan Phillips of the Snohomish County Sheriff's Office was dispatched in response to a report of a fight. When Deputy Phillips arrived in the parking lot, he observed five males standing around a sport utility vehicle (SUV). Two of the males ran around to the other side of the SUV. Deputy Phillips could see through the SUV's windows that one of the males had large diamond or cubic zirconia stud earrings in his ears. After Deputy Phillips ordered the two males to come back around the SUV, the male with the earrings ran away from the parking lot. The remaining male, later identified as Calpo, eventually came around the SUV and complied with Deputy Phillips's orders. Deputy Phillips noted that Calpo was quite intoxicated.

The male with the earrings, later identified as Webb, eventually returned to the parking lot. Deputy Phillips noted that Webb was intoxicated when he was arrested, but did not request a breath test when Webb was booked into jail because he was not concerned by Webb's level of intoxication.

The State charged Webb by amended information with one count of assault in the second degree. Prior to trial, the State moved to admit evidence that Webb had confronted McIntyre because McIntyre had told the police that Webb had stolen beer. Webb objected, arguing that the evidence was impermissible propensity evidence under ER 404(b). The trial court granted the State's motion

because the evidence was relevant to Webb's motive and its probative value was not outweighed by its potential prejudice.

At trial, McIntyre testified that he had told the police Webb's whereabouts. McIntyre also testified that, when Webb confronted him at the beach, he explained to Webb that he had seen Webb steal the beer and did not want to get in trouble with the police.

Webb testified that he could not remember what he was thinking when he assaulted McIntyre. Webb stated that he "kind of blacked out" during the altercation due to intoxication, and that his drinking affected his speech, thinking, and motor skills.[1] But Webb also testified that, immediately after McIntyre left the parking lot, he "snapped out of it" and "became aware" of what was going on.[2]

After the close of evidence, Webb requested a jury instruction on third degree assault. The State objected, arguing that McIntyre's testimony did not establish the elements of third degree assault. The trial court agreed with the State, and denied Webb's request. The trial court did instruct the jury on the lesser degree offense of assault in the fourth degree.

Webb also requested a jury instruction on voluntary intoxication. The State agreed that Webb's charged offense had a mental state element and that Webb's testimony established that he was intoxicated. But the State argued that the evidence at trial did not establish that Webb's intoxication barred him from forming the intent required for second degree assault. The trial court agreed with the State, and declined to give the instruction.

---

[1] Report of Proceedings (RP) (April 26, 2016) at 576-79, 603.
[2] RP (April 26, 2016) at 582-83.

Webb was convicted of assault in the second degree and sentenced to 61.5 months of confinement. At Webb's sentencing hearing, the State noted that Webb had already had his DNA tested and, therefore, further testing was unnecessary. Webb's judgment and sentence stated that he did not need to submit to DNA testing. But the trial court issued a written order requiring Webb to provide a DNA sample.

Webb appeals.

## ANALYSIS

### ER 404(b)

Webb argues that the trial court erred because McIntyre's testimony that he had spoken to police and told them that Webb had stolen beer violated ER 404(b). The State responds that the trial court properly admitted McIntyre's testimony as evidence of Webb's motive. We agree with the State.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b). The admission of evidence of other crimes "depend[s] on its relevance and the balancing of its probative value and danger of unfair prejudice." State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).

To admit evidence of a person's prior acts, "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh

5

the probative value against the prejudicial effect." State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

A trial court's evidentiary rulings are reviewed for abuse of discretion. State v. Halstein, 65 Wn. App. 845, 849-50, 829 P.2d 1145 (1992). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Det. of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). "A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts." In re Duncan, 167 Wn.2d at 403.

Here, ER 404(b) permits otherwise inadmissible evidence to be admitted on the issue of the defendant's motive. McIntyre's testimony that he had spoken to police, and that Webb was aware of that fact and questioned McIntyre about it immediately before assaulting him, was relevant to and probative on the issue of Webb's motive in confronting and assaulting McIntyre.

The probative value of the testimony was not outweighed by its potential prejudice against Webb. McIntyre's testimony concerned an accusation against Webb. McIntyre's testimony did not include whether Webb had been arrested or otherwise prosecuted for the alleged theft. Moreover, the alleged offense was a nonviolent property crime while the present case involves a serious violent offense.

Although any evidence of prior criminal behavior could prejudice Webb, the prejudicial impact of McIntyre's testimony was mitigated by the dissimilarity between the two offenses. Thus, we conclude that the trial court did not abuse its

discretion when it permitted McIntyre to testify that he had told police that Webb had stolen beer and that he had seen Webb take the beer under ER 404(b).

<u>Third Degree Assault Jury Instruction</u>

Webb argues that the trial court erred when it declined to instruct the jury on third degree assault. The State responds that the trial court correctly determined that there was insufficient evidence to support giving the instruction. We agree with the State.

A defendant may only be tried for the offense for which he is charged. <u>State v. Fernandez-Medina</u>, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000) (quoting WASH. CONST. art. I, § 22) (citing <u>State v. Peterson</u>, 133 Wn.2d 885, 889, 948 P.2d 381 (1997)). But "a defendant can be found guilty of a crime that is an inferior degree of the crime charged." <u>Fernandez-Medina</u>, 141 Wn.2d at 453 (citing RCW 10.61.003).

"A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: (a) [i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." RCW 9A.36.021(1)(a). "A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree: . . . (f) [w]ith criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." RCW 9A.36.031(1)(f).

A trial court properly administers an instruction on an inferior degree offense when

7

"(1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

Fernandez-Medina, 141 Wn.2d at 454 (internal quotation marks omitted) (quoting Peterson, 133 Wn.2d at 891). "[T]he evidence must raise an inference that *only* the . . . inferior degree offense was committed to the exclusion of the charged offense." Fernandez-Medina, 141 Wn.2d at 455.

"If the [trial court's decision regarding jury instructions] was based on a factual determination, it is reviewed for abuse of discretion." State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015) (citing State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998)). "When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction." Fernandez-Medina, 141 Wn.2d at 455.

Here, the evidence at trial did not raise an inference that Webb committed third degree assault to the exclusion of his charged offense of second degree assault. McIntyre testified that he suffered a cut that required stitches, bruises that were visible at least nine days after the incident, and soreness in his back on the day of the incident. McIntyre did not testify about pain from his injuries beyond when he was examined on the day of the incident. Thus, he did not testify that his injuries caused him lasting and substantial pain that rose to the level of considerable suffering.

McIntyre's testimony about his injuries supports a finding that he suffered substantial bodily harm from Webb's assault, as opposed to substantial and prolonged pain that caused considerable suffering. Therefore, the evidence at trial, even when viewed in the light most favorable to Webb, was insufficient to raise an inference that he committed assault in the third degree to the exclusion of assault in the second degree. We conclude that the trial court did not abuse its discretion when it declined to instruct the jury on third degree assault.

### Voluntary Intoxication Jury Instruction

Webb argues that the trial court erred when it declined to give the jury his requested instruction on voluntary intoxication. The State responds that the instruction was inappropriate because Webb did not submit sufficient evidence to establish that he was unable to acquire the requisite mental state for his offense. We agree with the State.

A defendant is entitled to have the trial court instruct the jury on his theory of the case if evidence supports the theory. State v. Hughes, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). The trial court must interpret the evidence in the record in the light most favorable to the defendant when determining whether an instruction is supported. State v. May, 100 Wn. App. 478, 482, 997 P.2d 956 (2000).

An instruction on voluntary intoxication allows the jury to consider whether the defendant acted with the intent required by his charged offense based on the evidence of intoxication at trial. State v. Thomas, 123 Wn. App. 771, 781, 98 P.3d 1258 (2004). The trial court must provide the jury with a voluntary intoxication instruction when "(1) the charged offense has a particular mens rea, (2) there is

substantial evidence the defendant was drinking and/or using drugs, and (3) there is evidence the drinking or drug use affected the defendant's ability to acquire the required mental state." State v. Webb, 162 Wn. App. 195, 209, 252 P.3d 424 (2011).

"[T]he evidence must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level of culpability to commit the crime charged." State v. Gabryschak, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996). "Evidence of drinking alone is insufficient to warrant the instruction; instead, there must be 'substantial evidence of the effects of the alcohol on the defendant's mind or body.'" Gabryschak, 83 Wn. App. at 253 (quoting Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 179, 817 P.2d 861 (1991)).

Substantial evidence may include the defendant's testimony, testimony of witnesses, objective evidence of intoxication, and actions of the police taken in response to the defendant's intoxication following arrest. See, e.g., State v. Jones, 95 Wn.2d 616, 622, 628 P.2d 472 (1981) (record contained substantial evidence of defendant's voluntary intoxication, including defendant's testimony, witness statements describing intoxicated appearance, and defendant's placement in "drunk tank" at the police station following arrest); see also State v. Rice, 102 Wn.2d 120, 122-23, 683 P.2d 199 (1984) (record contained substantial evidence of voluntary intoxication, including defendants' testimony that they had been drinking all day and had ingested multiple Quaaludes, and results of Breathalyzer tests following arrests); see also State v. Walters, 162 Wn. App. 74, 83, 255 P.3d 835 (2011) (record contained substantial evidence of voluntary intoxication based

on defendant's physical manifestations of intoxication, including slurred speech, droopy and bloodshot eyes, swaying back and forth, and lack of response to police officer's use of pain compliance techniques).

The trial court's decision to not give a requested jury instruction is reviewed for an abuse of discretion. State v. Buzzell, 148 Wn. App. 592, 602, 200 P.3d 287 (2009).

Here, Webb's charged offense of second degree assault required the State to prove that he acted intentionally to recklessly inflict substantial bodily harm on McIntyre. RCW 9A.36.021(1)(a). Webb relies on his own testimony that his drinking affected his ability to think during his assault on McIntyre to argue that the trial court erred by failing to instruct the jury on voluntary intoxication. But Webb's own testimony was not consistent on the issue of substantial intoxication. For example, Webb also testified that, soon after McIntyre left the scene, he was able to snap out of his intoxicated state, become aware of the situation, and flee from police. Further, other witnesses to the altercation testified that Webb was not exhibiting outward signs of significant intoxication, and Deputy Phillips was not concerned enough about Webb's intoxication to order a breath test when Webb was booked into jail.

Thus, Webb's inconsistent testimony, unsupported by other evidence in the record, is not substantial evidence of voluntary intoxication sufficient to prevent him from forming the intent required for second degree assault. We conclude that the trial court did not err when it declined to instruct the jury on voluntary intoxication.

## Conflicting DNA Orders

The parties agree that the trial court's order requiring Webb to submit to DNA testing conflicts with Webb's judgment and sentence. At Webb's sentencing hearing, the State and the trial court noted that Webb had already been DNA tested, and thus further testing was not required. Webb's judgment and sentence correctly reflects that Webb need not submit to DNA testing because the Washington State Patrol Crime Laboratory already has a sample from Webb. Therefore, we remand so that the trial court may vacate the order requiring DNA testing that conflicts with Webb's judgment and sentence.

We remand for vacation of the order of the trial court requiring DNA testing, and otherwise affirm.

Trickey, J

WE CONCUR: